**EXHIBIT C**

1  GLEN A. VAN DYKE, ESQ., SBN. 183795
   SALINGER VAN DYKE
2  Attorneys at Law
   9132 Elk Grove Boulevard
3  Elk Grove, California 95624
   Telephone: (916) 686-5788
4  Fax      : (916) 686-5397

5  Attorneys for Plaintiffs

6

7

**F I L E D**
YOLO SUPERIOR COURT

NOV 2 8 2006

By_____G. KUBOI_____
Deputy

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      FOR THE COUNTY OF YOLO

10

11  DONALD ANDERSON, JOYCE            CASE NO. CVC6-2070
    ANDERSON, ALFRED BAILEY, JO
12  LYNNE BAILEY, HAROLD BRADLEY,     COMPLAINT
    BETTY BRADLEY, EDWARD
13  CRISMAN, LINDA CRISMAN, DAVID      1.    STRICT LIABILITY;
    DUNCAN, PHYLLIS DUNCAN, DENNIS     2.    BREACH OF IMPLIED
14  EBANKS, MAMMIE EBANKS, VERN              WARRANTY;
    FAVRAT, PAULA FAVRAT, SANDRA       3.    BREACH OF EXPRESS
15  FRANCO, PAUL GENTRY, PATRICIA            WARRANTY;
    GENTRY, JEFF GOODALL, ANNA         4.    BREACH OF CONTRACT;
16  GOODALL, GWEN GORDON, WARD         5.    NEGLIGENCE;
    HOLLOWELL, GLORIA HOLLOWELL,       6.    BREACH OF H&S CODE 18035
17  GRACIAN HULSEY, MARY HULSEY,             ET SEQ.;
    LILA JAMES, LARRY KRATZER, KRIS    7.    FRAUD;
18  KRATZER, JAMES MARION, MARY        8.    BREACH OF COVENANT OF
    ANN MARION, PETER MORRIS, LARRY          QUIET ENJOYMENT OF
19  RAYMOS, BARBARA RAYMOS, DAVID            TENANCY;
    SHEETS, BETTYE SHEETS, JAMES       9.    UNLAWFUL, UNFAIR AND
20  SUMNER, JOYCE SUMNER, PHYLLIS            FRAUDULENT BUSINESS
    WEBSTER,                                 PRACTICES B&P CODE
21                        Plaintiffs,        SECTION 17200

22  vs.

23  GRANT PARK HOMES, GRANT PARK
    DEVELOPMENT, COUNTRY FAIR
24  ESTATES, MELVIN SMITH, JERRY
    BURGER, JOEL BURGER, and DOES 1
25  THROUGH 300, INCLUSIVE,

26            Defendants.
    _____/
27

3        Plaintiffs allege on information and belief the following:

**A.   Parties**

1       Defendant GRANT PARK HOMES is an entity which sold many of the Plaintiffs their manufactured homes which are subject of this Complaint. Grant Park Homes is also an owner, partner, agent and/or is otherwise affiliated with Defendant COUNTRY FAIR ESTATES and GRANT PARK DEVELOPMENT aka GRANT PARK CONSTRUCTION.

2.      Defendant COUNTRY FAIR ESTATES is a Mobile Home Park located in Dunnigan, California. Plaintiffs are informed and believe that Defendant MELVIN SMITH and JERRY BURGER are the owners of the Park. COUNTRY FAIR ESTATES is also the owner, partner, agent and/or is otherwise affiliated with Defendant GRANT PARK HOMES and GRANT PARK DEVELOPMENT aka GRANT PARK CONSTRUCTION. All of the Plaintiffs are lessees of space from COUNTRY FAIR ESTATES and each Plaintiff has a written lease agreement which is for a term of over one year.

3.      COUNTRY FAIR ESTATES is a senior citizen park leasing, with some exceptions, exclusively to senior citizens (55 or over).

3.      Defendant JOEL BURGER is an individual who was the salesperson and/or dealer for the sale of the manufactured homes to the Plaintiffs in this action. JOEL BURGER is also an owner, partner, corporate officer, agent and/or otherwise affiliated with Defendants COUNTRY FAIR ESTATE, GRANT PARK HOMES and GRANT PARK DEVELOPMENT aka GRANT PARK CONSTRUCTION.

4.      Defendant GRANT PARK DEVELOPMENT aka GRANT PARK CONSTRUCTION is the installation contractor for Plaintiffs' manufactured homes. GRANT PARK DEVELOPMENT's California Contractor's License number is 369146. It is a general partnership consisting of Defendants JEROLD ALLEN BURGER and MELVIN LEE SMITH. GRANT PARK CONSTRUCTION is also the owner, partner, agent and/or is otherwise affiliated with Defendants GRANT PARK HOMES, COUNTRY FAIR ESTATES and JOEL BURGER.

5.      Defendant OAKWOOD MOBILE HOMES, INC. is a seller and/or dealer of the manufactured homes sold to the Plaintiffs as alleged in this Complaint.

4.      FLEETWOOD was the manufacturer of the homes sold to the Plaintiffs as

1  indicated in this Complaint.

2       11.    THE KARSTEN COMPANY was the manufacturer of the homes sold to the

3  Plaintiffs as indicated in this Complaint

4       10.    Plaintiffs Donald P. Anderson and Joyce C. Anderson live at Lot 45 of the Park.

5  They purchased their home from Defendant JOEL BURGER and GRANT PARK HOMES by

6  way of a written purchase order in 2005.  Their home was manufactured by FLEETWOOD.

7       11.    Plaintiffs Alfred L Bailey and Jo Lynn Bailey live at Lot 159 of the Park.  They

8  purchased their home from Defendant JOEL BURGER and GRANT PARK HOMES by way of a

9  written purchase order in 2005.  Their home was manufactured by KARSTEN.

10       12.    Plaintiffs Harold Bradley and Betty Bradley live at Lot 17 of the Park.  Plaintiffs

11  attempted to purchase a manufactured home from Defendant JOEL BURGER and GRANT

12  PARK HOMES and FLEETWOOD but, because of the actions of GRANT PARK HOMES,

13  JOEL BURGER, and COUNTRY FAIR ESTATES they were unable to secure a new home.

14       13.    Plaintiffs Ed Crisman and Linda Crisman live at ~~Lot 177~~ of the Park.  They

15  purchased their home from Defendant JOEL BURGER and GRANT PARK HOMES by way of a

16  written purchase order in 2005.  Their home was manufactured by FLEETWOOD.

17       14.    Plaintiffs David L. Duncan and Phyllis M Duncan live at Lot 85 of the Park.  They

18  purchased their home from Defendant JOEL BURGER and GRANT PARK HOMES by way of a

19  written purchase order in 2001.  Their home was manufactured by KARSTEN.

20       15.    Plaintiffs Dennis Ebanks and Mammie Ebanks live at Lot 33 of the Park.  They

21  purchased their home from Defendant JOEL BURGER and GRANT PARK HOMES by way of a

22  written purchase order in 2003.  Their home was manufactured by FLEETWOOD.

23       16.    Plaintiffs Vern Favrat and Paula Favrat live at Lot 180 of the Park.  They

24  purchased their home from Defendant JOEL BURGER and GRANT PARK HOMES by way of a

25  written purchase order in 2005.  Their home was manufactured by KARSTEN.

26       17.    Plaintiff Sandra L. Franco lives at Lot 157 of the Park. She purchased her home

27  from Defendant JOEL BURGER and GRANT PARK HOMES by way of a written purchase

28  order in 2005. Her home was manufactured by KARSTEN.

18.     Plaintiffs Paul Gentry and Patricia Gentry live at Lot 166 of the Park. They purchased their home from Defendant JOEL BURGER and GRANT PARK HOMES by way of a written purchase order in 2005. Their home was manufactured by KARSTEN.

19.     Plaintiffs Jeff Goodall and Anna Goodall live at Lot 35 of the Park. They purchased their home from Defendant JOEL BURGER and GRANT PARK HOMES by way of a written purchase order in 2004. Their home was manufactured by KARSTEN.

20.     Plaintiff Gwen Gordon lives at Lot 147 of the Park. She purchased her home from Defendant JOEL BURGER and GRANT PARK HOMES by way of a written purchase order in 2002. Her home was manufactured by KARSTEN.

21.     Plaintiffs Ward Hollowell and Gloria Hollowell live at Lot 181 of the Park. They purchased their home from Defendant JOEL BURGER and GRANT PARK HOMES by way of a written purchase order in 2005. Their home was manufactured by KARSTEN.

22.     Plaintiffs Gracian Hulsey and Mary Hulsey live at Lot 153 of the Park. They purchase their home from Defendant OAKWOOD MOBILE HOME, Inc by way of purchase agreement in 2002. Their home was manufactured by HBOS Manufacturing.

23.     Plaintiff Lila James lives at Lot 115 of the Park. She purchased her home from Defendant JOEL BURGER and GRANT PARK HOMES by way of a written purchase order in 2001.

24.     Plaintiffs Larry Kratzer and Kristin Kratzer live at Lot 136 of the Park. They purchased their home from Defendant JOEL BURGER and GRANT PARK HOMES by way of a written purchase order in 2001. Their home was manufactured by FLEETWOOD.

25.     Plaintiffs James Marion and Mary Ann Marion live at Lot 34 of the Park. They purchased their home from Defendant JOEL BURGER and GRANT PARK HOMES by way of a written purchase order in 2004. Their home was manufactured by KARSTEN.

26.     Plaintiffs Joe Morris and Mary Lou Morris live at Lot 141 of the Park. They purchased their home from Defendant JOEL BURGER and GRANT PARK HOMES by way of a written purchase order in 2000. Their home was manufactured by FLEETWOOD.

27.     Plaintiff Peter L. Morris lives at Lot 46 of the Park. He purchased his home from

Complaint for Damages                    -4-                    Anderson v. Grant Park

1   Defendant JOEL BURGER and GRANT PARK HOME by way of a written purchase agreement

2   in 2005. His home was manufactured by KARSTEN.

3      28.   Plaintiffs Larry Raymos and Barbara Raymos live at Lot 164 of the Park. They

4   purchased their home from Defendant JOEL BURGER and GRANT PARK HOMES by way of a

5   written purchase order in 2005. Their home was manufactured by KARSTEN.

6      30.   Plaintiffs David Sheets and Bettye Sheets live at Lot 142 of the Park. They

7   purchased their home from Defendant JOEL BURGER and GRANT PARK HOMES by way of a

8   purchase order in 2000. Their home was manufactured by FLEETWOOD.

9      31.   Plaintiffs James Summer and Joyce Summer live at Lot 135 of the Park. They

10   purchased their home from Defendant JOEL BURGER and GRANT PARK HOMES by way of a

11   written purchase order in 2003. Their home was manufactured by KARSTEN.

12      32.   Plaintiff Phyllis Weber lives at Lot 27 of the Park. She purchased her home from

13   Defendant JOEL BURGER and GRANT PARK HOME by way of written purchase agreement in

14   2003. Her home was manufactured by KARSTEN.

15   **B.**    **General Statement of Facts**

16      33.   Plaintiffs in this lawsuit are senior citizens (55 or over) who purchased their

17   homes to live in as part of their retirement plan.

18      34.   Plaintiffs as alleged above entered into separate contracts with Defendants to

19   secure their homes and a place to put their homes.

20      35.   Plaintiffs were financially induced into purchasing their manufactured homes

21   through defendant JOEL BURGER and GRANT PARK HOMES and securing a long term lease

22   from COUNTRY FAIR ESTATES.

23      36.   The scheme essentially included the following elements: the Plaintiffs would look

24   to lease a space at the park for purposes of placing their manufactured homes for a long period of

25   time. To secure a space, Plaintiffs would be required to place a deposit (typically $5,000.00)

26   paid to either GRANT PARK HOMES and COUNTRY FAIR ESTATES and/or JOEL

27   BURGER and commit to a monthly payment and a lease term. The deposit was in excess of 14

28   times the monthly rent and was in excess of that allowed by law.

37.     As part of the deposit, the agreement specifically stated that the deposit would be credited toward the purchase of a new manufactured home if the person purchased it through GRANT PARK HOMES. If the person did not purchase their manufactured home through GRANT PARK HOMES, the deposit would be credited toward a lease fee of $10,000.00 which was required for any lease that would exceed one year. Some of the deposit agreements do not specify where the $5,000.00 would be credited if a person purchased a home through a different dealer. A reader would assume that the $5,000.00 would be lost if the Plaintiff chose to purchase a home through a dealer other than Defendants.

38.     Plaintiffs subsequently entered into lease agreements which were for varying terms of one year or more which was prepared by Defendants. Regardless of whether the lease was for one year or more, the $10,000 deposit was required and was a unilateral mandatory condition to Plaintiffs staying at the Park. Further, many of the Plaintiffs were not informed of the $10,000.00 requirement or what it was for until after they had purchased their homes and/or at close of escrow.

39.     Virtually all of the Plaintiffs purchased their homes from Defendants. The purchase was not pursuant to a lawful purchase agreement, but was set forth in a document prepared by Defendants that did not fulfill the statutory requirements. Among other things the purchase agreement failed to identify the components of the homes, specify the items which were to be provided, Defendants added items after execution by Plaintiffs without Plaintiffs' consent, failed to include the warranties required by law and contained various other omissions in violation of law.

40.     Regardless of whether the Plaintiffs paid their $5,000 deposit at purchase of their homes from Defendants, they were not given the credit on their purchase and Defendants directly debited the $10,000.00 out of escrow as a charge which was not described to Plaintiffs in the contract or at escrow.

41.     The purchase agreement designated Defendant GRANT PARK DEVELOPMENT aka GRANT PARK CONSTRUCTION as the installer of the manufactured homes.

42.     Defendants GRANT PARK DEVELOPMENT aka GRANT PARK

1  CONSTRUCTION failed to properly and timely install Plaintiffs' homes causing significant

2  damage to the homes and significant delay in move in which has injured each Plaintiff in varying

3  amounts.

4       42.    Throughout the last three years the park has not been properly maintained such

5  that it has experienced severe flooding in the common areas as well as Plaintiffs' individual

6  spaces.

7       43.    The improper maintenance has caused damage to Plaintiffs' homes, prohibit their

8  use of the park and their homes and otherwise affected their right to quite enjoyment of their lots.

9       44.    Defendants, in doing the acts alleged herein, did them in concert with one another

10  an in conjunction and conspiracy with each other with the purpose of gaining a financial benefit

11                    **FIRST CAUSE OF ACTION**

12                   **(Strict Liability All Defendants)**

13       45.    Plaintiffs reallege and incorporate herein by reference each and every allegation

14  contained in each and every paragraph of this Complaint, and further allege:

15       46.    Defendants, and each of them, intended that the homes within the Project would

16  be sold to members of the public and would be used by members of the public for single family

17  residential purposes. Defendants, and each of them, knew or should have known that the

18  purchasers of homes would rely upon the skill and judgment of Defendants in the development,

19  construction, installation, of said homes.

20       47.    Since completion, said Project developed latent defects not apparent by reasonable

21  inspection at the time of purchase, including, but not limited to, the following construction

22  defects:

23          a.    Drainage systems were improperly designed and/or constructed and/or

24  built out of defective materials;

25          b.    Basic design components were omitted and/or improperly installed and/or

26  built out of defective materials;

27          c.    The foundation systems were improperly designed and/or constructed

28  and/or built out of defective materials:

1          d.      The homes were improperly installed causing damage to the homes;

2          e.      Defective concrete materials and/or workmanship which has caused

3    property damage to Plaintiffs' homes;

4          f.      Improper grading and/or drainage which has caused damage to Plaintiffs'

5    homes;

6          g.      Defective landscaping materials and/or workmanship which has caused

7    damage to Plaintiffs' homes;

8          h.      Improper construction of the decks and brick work which has caused

9    damage to Plaintiffs' homes.

10         48.     The construction defects alleged herein were latent defects not apparent from

11   reasonable inspection when the Plaintiffs purchased their respective homes in the Project.

12   Plaintiffs discovered the defects and damages herein complained of within the past three (3)

13   years, and could not reasonably have discovered said defects and damages sooner.

14         49.     Plaintiffs are informed and believe, and thereon allege that as a direct and

15   proximate result of the above-described defects, Plaintiffs have suffered damages in a sum in

16   excess of the jurisdictional minimum of this Court, which damages represent the costs of repair

17   of said defects and any injury to person or property that resulted from said defects.

18         50.     Plaintiffs are further informed and believe, and thereon allege that as a direct and

19   proximate result of the above-alleged defects, Plaintiffs have suffered damages, said damages

20   including the diminution in value to their interest in the Project and damages to their separate

21   homes and personal property within the Project.

22         51.     As a direct and legal result of the above alleged defects, Plaintiffs have suffered

23   and will continue to suffer loss of use and enjoyment of the Project and their individual homes

24   therein, in an amount subject to proof at the time of trial.

25                              **SECOND CAUSE OF ACTION**

26                    **(Breach of Implied Warranty all Defendants)**

27         52.     Plaintiffs reallege and incorporate herein by reference each and every allegation

28   contained in each and every paragraph of this Complaint, and further allege:

Complaint for Damages                           -8-                          Anderson v. Grant Park

53.     By reason of and in connection with the contract for construction, sale and transfer of the homes to Plaintiffs, Defendant impliedly warranted that said homes and the appurtenances thereto were fit for a particular purpose, were of merchantable quality, and were in a safe and habitable condition.

54.     Plaintiffs are informed and believe, and thereon allege that the homes are not fit for single-family residential purposes, are not of merchantable quality, and are not in a safe and habitable condition. Within the past four (4) years, Plaintiffs have discovered that the warranties of Defendant were false. Plaintiffs, promptly upon discovery of such breach of implied warranty, gave appropriate notification of such breach.

55.     Plaintiffs requested Defendants to comply with the warranty for the defects. Defendants responded with promises of repairs, statements that the problems were not defects, and/or site specific "band-aid" repairs which were represented as complete and adequate repairs. Defendants, however, despite its representations which were in fact false and intended to prevent Plaintiffs from seeking legal action against Defendants, refused to actually correct the defective condition and associated damage.

56.     Defendant has refused to make the repairs as required by the contract and/or make independent repairs in breach of the express/implied warranty.

57.     As a direct and proximate result of said breach of implied warranty, Plaintiffs have been damaged in an amount equal to the cost to repair of their homes. The full extent and nature of said damages are not presently ascertained. Plaintiffs are informed and believe, and thereon allege that the total amount of said damages is a sum in excess of the jurisdictional minimum of this Court.

58.     As a further direct and proximate result of the above-alleged breach of implied warranty, Plaintiffs have been damaged by the diminution of value of their homes.

### THIRD CAUSE OF ACTION

### (Breach of Express Warranty all Defendants)

59.     Plaintiff incorporates the above allegations as if fully alleged herein and further alleges as follows.

1    60.    Each of the contracts alleged herein provide for a warranty that the materials and

2    equipment furnished pursuant to the contract will be of good quality and new and that the work

3    performed will be free from defects and will conform with the requirements of the contract

4    documents. Further, the contracts expressly warrant that the work will be fit for the particular

5    intended use of the project.

6    61.    Plaintiffs requested Defendants to comply with the warranty for the defects.

7    Defendants responded with promises of repairs, statements that the problems were not defects,

8    and/or site specific "band-aid" repairs which were represented as complete and adequate repairs.

9    Defendants, however, despite its representations which were in fact false and intended to prevent

10   Plaintiffs from seeking legal action against Defendants, refused to actually correct the defective

11   condition and associated damage.

12   62.    Defendants' breach of the express warranties damaged Plaintiffs.  The damages

13   include, but are not limited to, costs of repair, loss of value, loss of use of portions of the Project,

14   investigation costs, inspection costs, and attorneys' fees all to an extent and in an amount to be

15   proven at trial.

16   ### FOURTH CAUSE OF ACTION

17   ### (Breach of Contract all Defendants)

18   63.    Plaintiffs reallege and incorporate herein by reference each and every allegation

19   contained in each and every paragraph of this Complaint, and further allege:

20   64.    Plaintiffs and Defendant entered into a written contract wherein Plaintiff would be

21   delivered a home installed with the component parts agreed upon and paid for by Plaintiffs.

22   65.    Plaintiffs fully performed under the contract providing the consideration agreed

23   upon and fulfilling the other conditions set forth in the contract.

24   66.    Defendant, however, did not perform under the contract in that Defendant failed

25   to provide the property in the condition represented at the time of formation of the contract,

26   failed to complete the homes, failed to perform the work in a workmanlike manner, failed to

27   supervise the subcontractors promised, failed to provide the homes in a condition and in the

28   times agreed upon, and provided a property with the defects alleged herein.

67.     Such breaches of contract damaged Plaintiffs in an amount and to an extent to be proven at trial.

## FIFTH CAUSE OF ACTION

### (Negligence Against all Defendants)

68.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in each and every paragraph of this Complaint. and further allege:

69.     Plaintiffs are informed and believe, and thereon allege that Defendants, and each of them, negligently failed to use reasonable care in the installation of the Plaintiffs' homes.

70.     Said Defendants, and each of them, were under a duty to exercise ordinary care in said installation and construction and to perform such work in a timely and workmanlike manner.

71.     Plaintiffs are informed and believe, and thereon allege that said Defendants negligently performed such installation and construction work.

72.     Plaintiffs discovered said damage and negligent design and construction within the past three (3) years, and could not have reasonably discovered Defendants' said negligent conduct prior to that date.

73.     As a direct and proximate result of the negligence of Defendants, and each of them, Plaintiffs have been damaged. in an amount equal to the cost to repair each of Plaintiffs' homes. Plaintiffs are informed and believe, and thereon allege that the total damages is a sum in excess of the jurisdictional minimum of this Court.

74.     As a further direct and proximate result of the above alleged negligence, Plaintiffs have suffered a diminution in value to their respective properties.

75.     As a direct and legal result of the above alleged negligence, Plaintiffs have suffered and will continue to suffer loss of use and enjoyment of the Project and their individual homes therein, in an amount subject to proof at the time of trial.

## SIXTH CAUSE OF ACTION

### (BREACH OF H&S CODE 18035 ET SEQ. Against All Defendants)

76.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in each and every paragraph of this Complaint, and further allege:

77.     Virtually all of the Plaintiffs purchased their homes from Defendants. The purchase was not pursuant to a lawful purchase agreement but was set forth in a document prepared by Defendants that did not fulfill the statutory requirements. Among other things the purchase agreement failed to identify the components of the homes, specify the items which were to be provided. Defendants added items after execution by Plaintiffs without Plaintiffs' consent, failed to include the warranties required by law and contained various other omissions in violation of law. Further, Defendant failed to comply with the law regarding disputed and retention in escrow further damaging Plaintiffs.

78.     Defendants' failure to comply with the statutory requirements have damaged Plaintiffs resulting in them not receiving the homes equipped as paid for by Plaintiffs and including additional charges for items not desired.

<u>SEVENTH CAUSE OF ACTION</u>

(FRAUD AGAINST ALL DEFENDANTS)

79.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in each and every paragraph of this Complaint, and further allege:

80.     By way of its relationship with Plaintiffs, Defendants' actions were fraudulent causing Plaintiffs' significant damages. The fraud included:

      a.     Defendants' requirement of the payment of $10,000 and the stated purposes and absent of credit for said payments;

      b.     Defendants' unilateral modification by Defendants Joel Burger of items to be included in the purchase agreement;

      c.     Defendants' representations of time of delivery and completion of the installation of the homes which in fact knowingly false.

81.     Such fraudulent actions and statements were made for the purpose of inducing Plaintiffs to purchase the homes from Defendants, commit Plaintiffs to residency at the Park and increase the profits of Defendants arising out of the relationship.

82.     Defendants' fraud has damaged Plaintiffs including the loss of the $10,000.00, the charges for products not agreed upon and the damages sustained from the delays caused by

1 Defendants.

2                          EIGHTH CAUSE OF ACTION

3              (BREACH OF COVENANT OF QUIET ENJOYMENT OF TENANCY)

4       83.    Plaintiffs reallege and incorporate herein by reference each and every allegation

5 contained in each and every paragraph of this Complaint, and further allege:

6       84.    Throughout the last three years the Park has not been properly maintained such

7 that it has experienced severe flooding in the common areas as well as Plaintiffs' individual

8 spaces as required by the California Civil Code.

9       85.    Defendants have failed to properly construct and maintain other areas of the Park

10 including the driveways, roadways and drainage areas as required by the California Civil Code.

11      86.    The improper maintenance has caused damage to Plaintiffs' homes, prohibited

12 their use of the Park and their homes and otherwise affected their right to quiet enjoyment of

13 their lots.

14      87.    Plaintiffs have provided statutory notice of the Defendants' failure to properly

15 maintain the park and the Park has failed to correct the condition.

16      88.    Defendants' failure to properly maintain the park has been negligent and willful.

17      89.    Said improper maintenance has damaged Plaintiffs including damaging their

18 homes and limiting their ability to access and leave their homes,

19      90.    Plaintiffs seek statutory, consequential and general damages from Defendants

20 from the failure to maintain the park in an amount an to an extent to be proven at trial.  Further,

21 Plaintiffs seek an injunction to compel Defendants to maintain the park and prevent the flooding

22 alleged herein.

23                           NINTH CAUSE OF ACTION

24            (UNLAWFUL, UNFAIR AND FRAUDULENT BUSINESS PRACTICES

25             B&P CODE SECTION 17200 AGAINST ALL DEFENDANTS)

26      91.    Plaintiffs reallege and incorporate herein by reference each and every allegation

27 contained in each and every paragraph of this Complaint, and further allege the following:

28      92.    In committing the acts specified above, Defendants have acted and continue to

act unlawfully and unfairly through the lease and purchase agreements alleged above

93.    In committing the acts specified above, all Defendants have acted and continue to act fraudulently by making the false and/or misleading representations about the purchase and the lease of the lot.

94.    Defendants' conduct is immoral, unethical, oppressive, and unscrupulous, and has injured and is likely to continue to substantially injure Plaintiffs.

95.    In committing the acts alleged herein, Defendants are in violation of the California Unfair Competition Act, Business and Professions Code § 17200 et seq. entitling Plaintiffs to injunctive relief, restitution for the cost of obtaining a valid express warranty on the homes, civil penalties, punitive damages, attorneys fees and cost of the litigation.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.    For special damages according to proof, including but not limited to, cost to repair, loss of profits, loss of market value, loss of financing, loss of investment and out-of-pocket expenses;

2.    For attorneys fees and costs of suit incurred herein;

3.    For interest at the legal rate;

4.    For a temporary and permanent injunction; and

5.    For such other and further relief as the Court may deem just and proper.

Dated: November 7, 2006

*SALINGER VAN DYKE*

By: _____

GLEN A. VAN DYKE, ESQ.
Attorney for Plaintiffs

GLEN A. VAN DYKE, ESQ., SBN: 183796
**SALINGER VAN DYKE**
Attorneys at Law
9132 Elk Grove Boulevard
Elk Grove, California 95624
Telephone: (916) 686-5788
Fax        : (916) 686-5397

Attorneys for Plaintiffs

F I L E D
YOLO SUPERIOR COURT

APR 0 5 2007

By_____ . E. ENDO
                    Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF YOLO

DONALD ANDERSON, JOYCE
ANDERSON, ALFRED BAILEY, JO
LYNNE BAILEY, HAROLD BRADLEY,
BETTY BRADLEY, EDWARD
CRISMAN, LINDA CRISMAN, DAVID
DUNCAN, PHYLLIS DUNCAN, DENNIS
EBANKS, MAMMIE EBANKS, VERN
FAVRAT, PAULA FAVRAT, SANDRA
FRANCO, PAUL GENTRY, PATRICIA
GENTRY, JEFF GOODALL, ANNA
GOODALL, GWEN GORDON, WARD
HOLLOWELL, GLORIA HOLLOWELL,
GRACIAN HULSEY, MARY HULSEY,
LILA JAMES, LARRY KRATZER, KRIS
KRATZER, JAMES MARION, MARY
ANN MARION, PETER MORRIS, LARRY
RAYMOS, BARBARA RAYMOS, DAVID
SHEETS, BETTYE SHEETS, JAMES
SUMNER, JOYCE SUMNER, PHYLLIS
WEBSTER,

                              Plaintiffs,

vs.

GRANT PARK HOMES, GRANT PARK
DEVELOPMENT, COUNTRY FAIR
ESTATES, MELVIN SMITH, JERRY
BURGER, JOEL BURGER, and DOES 1
THROUGH 300, INCLUSIVE,

                              Defendants.
_____/

CASE NO. CV06-2070

**FIRST AMENDED COMPLAINT**

| | |
|---|---|
| 1. | STRICT LIABILITY; |
| 2. | BREACH OF IMPLIED WARRANTY; |
| 3. | BREACH OF EXPRESS WARRANTY; |
| 4. | BREACH OF CONTRACT; |
| 5. | NEGLIGENCE; |
| 6. | BREACH OF H&S CODE 18035 ET SEQ.; |
| 7. | FRAUD; |
| 8. | BREACH OF COVENANT OF QUIET ENJOYMENT OF TENANCY; |
| 9. | UNLAWFUL, UNFAIR AND FRAUDULENT BUSINESS PRACTICES B&P CODE SECTION 17200 |

Plaintiffs allege on information and belief the following:

First Amended Complaint                    -1-                    Anderson v. Grant Park

1      1.      Plaintiffs amend their Complaint to include the following homeowners as named

2   plaintiffs:

3      2.      Plaintiffs Everett Bair and Mary Bair live at Lot 11 of the Park. They purchased

4   their home from Defendant JOEL BURGER and Defendant GRANT PARK DEVELOPMENT

5   by way of purchase agreement in 2006. Their home was manufactured by Silvercrest Western

6   Homes Development.

7      3.      Plaintiffs Robert Harris and Patricia Harris live at Lot (36) of the Park. They

8   purchased their home from Defendant JOEL BURGER and Defendant GRANT PARK

9   DEVELOPMENT by way of purchase agreement in 2004. Their home was manufactured by

10  Karsten Homes.

11     4.      Plaintiffs Gerald and Darlene Ellingson live at 965 Dawnview Way, Vacaville,

12  California 95687. They entered into an agreement with Defendant JOEL BURGER and

13  Defendant GRANT PARK DEVELOPMENT by way of purchase agreement in 2005. Their

14  home was to be manufactured by Fleetwood Homes.

15  Dated: March 26, 2007                          *SALINGER VAN DYKE*

16

17                                        By:

18                                            GLEN A. VAN DYKE, ESQ.
                                              Attorney for Plaintiffs

19

20

21

22

23

24

25

26

27

28

First Amended Complaint                  -2-                   Anderson v. Grant Park

GLEN A. VAN DYKE, ESQ., SBN: 183796
**SALINGER VAN DYKE**
**Attorneys at Law**
9132 Elk Grove Boulevard
Elk Grove, California 95624
Telephone: (916) 686-5788
Fax      : (916) 686-5397

Attorneys for Plaintiffs

F I L E D
YOLO SUPERIOR COURT

OCT 05 2007

By  J. CASAULONG
Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF YOLO

| | |
|---|---|
| ALBERT BENT, EVELYN BENT, THOMAS GRAF, MICHELLE GRAF, EDWIN HEENEY, MARY HEENEY, PETER FRANZEN, SANDRA FRANZEN, <br><br> Plaintiffs, <br><br> vs. <br><br> GRANT PARK HOMES, GRANT PARK DEVELOPMENT, COUNTRY FAIR ESTATES, MELVIN SMITH, JERRY BURGER, JOEL BURGER, and DOES 1 THROUGH 300, INCLUSIVE, <br><br> Defendants. <br> _____ / | CASE NO. CV07- 2197 <br><br> **COMPLAINT** <br><br> 1. STRICT LIABILITY; <br> 2. BREACH OF IMPLIED WARRANTY; <br> 3. BREACH OF EXPRESS WARRANTY; <br> 4. BREACH OF CONTRACT; <br> 5. NEGLIGENCE; <br> 6. BREACH OF H&S CODE 18035 ET SEQ.; <br> 7. FRAUD; <br> 8. BREACH OF COVENANT OF QUIET ENJOYMENT OF TENANCY; <br> 9. UNLAWFUL, UNFAIR AND FRAUDULENT BUSINESS PRACTICES B&P CODE SECTION 17200 |

Plaintiffs allege on information and belief the following:

**A.**    **Parties**

1.      Defendant GRANT PARK HOMES is an entity which sold many of the Plaintiffs

their manufactured homes which are subject of this Complaint. Grant Park Homes is also an

owner, partner, agent and/or is otherwise affiliated with Defendant COUNTRY FAIR ESTATES

and GRANT PARK DEVELOPMENT aka GRANT PARK CONSTRUCTION.

2.      Defendant COUNTRY FAIR ESTATES is a Mobile Home Park located in

Complaint for Damages                            -1-                          Bent v. Grant Park

1   Dunnigan, California. Plaintiffs are informed and believe that Defendant MELVIN SMITH and

2   JERRY BURGER are the owners of the Park. COUNTRY FAIR ESTATES is also the owner,

3   partner, agent and/or is otherwise affiliated with Defendant GRANT PARK HOMES and

4   GRANT PARK DEVELOPMENT aka GRANT PARK CONSTRUCTION. All of the Plaintiffs

5   are lessees of space from COUNTRY FAIR ESTATES and each Plaintiff has a written lease

6   agreement which is for a term of over one year.

7       3.    COUNTRY FAIR ESTATES is a senior citizen park leasing, with some

8   exceptions, exclusively to senior citizens (55 or over).

9       4.    Defendant JOEL BURGER is an individual who was the salesperson and/or

10   dealer for the sale of the manufactured homes to the Plaintiffs in this action. JOEL BURGER is

11   also an owner, partner, corporate officer, agent and/or otherwise affiliated with Defendants

12   COUNTRY FAIR ESTATE, GRANT PARK HOMES and GRANT PARK DEVELOPMENT

13   aka GRANT PARK CONSTRUCTION.

14       5.    Defendant GRANT PARK DEVELOPMENT aka GRANT PARK

15   CONSTRUCTION is the installation contractor for Plaintiffs' manufactured homes. GRANT

16   PARK DEVELOPMENT's California Contractor's License number is 369146. It is a general

17   partnership consisting of Defendants JEROLD ALLEN BURGER and MELVIN LEE SMITH.

18   GRANT PARK CONSTRUCTION is also the owner, partner, agent and/or is otherwise affiliated

19   with Defendants GRANT PARK HOMES, COUNTRY FAIR ESTATES and JOEL BURGER.

20       6.    Defendant OAKWOOD MOBILE HOMES, INC. is a seller and/or dealer of the

21   manufactured homes sold to the Plaintiffs as alleged in this Complaint.

22       7.    FLEETWOOD was the manufacturer of the homes sold to the Plaintiffs as

23   indicated in this Complaint.

24       8.    SILVERCREST was the manufacturer of the homes sold to the Plaintiffs as

25   indicated in this Complaint.

26       9.    Plaintiffs Albert & Evelyn Bent live at Lot 113 of the Park. They purchased their

27   home from Defendant JOEL BURGER and Defendant GRANT PARK DEVELOPMENT by

28   way of purchase agreement in 2001. Their home was manufactured by Fleetwood.

1       10.    Plaintiffs Thomas & Michelle Graf live at Lot 13 of the Park. They purchased

2  their home from previous owner Ron Zuney by way of purchase agreement in 2006. Their home

3  was manufactured by Fleetwood.

4       11.    Plaintiffs Edwin & Mary Heeney live at Lot 105 of the Park. They purchased their

5  home from the previous owners of Country Fair Estates in 1990.  Their home was manufactured

6  by Silvercrest.

7       12.    Plaintiffs Peter & Sandra Franzen live at Lot 152 of the Park. They purchased

8  their home from the previous owner Tom Bittle by way of purchase agreement in 2005. Their

9  home was manufactured by Fleetwood.

10  **B.**    **General Statement of Facts**

11       13.    Plaintiffs in this lawsuit are senior citizens (55 or over) who purchased their

12  homes to live in as part of their retirement plan.

13       14.    Plaintiffs as alleged above entered into separate contracts with Defendants to

14  secure their homes and a place to put their homes.

15       15.    Plaintiffs were financially induced into purchasing their manufactured homes

16  through defendant JOEL BURGER and GRANT PARK HOMES and securing a long term lease

17  from COUNTRY FAIR ESTATES.

18       16.    The scheme essentially included the following elements: the Plaintiffs would look

19  to lease a space at the park for purposes of placing their manufactured homes for a long period of

20  time.  To secure a space, Plaintiffs would be required to place a deposit (typically $5,000.00)

21  paid to either GRANT PARK HOMES and COUNTRY FAIR ESTATES and/or JOEL

22  BURGER and commit to a monthly payment and a lease term.  The deposit was in excess of 14

23  times the monthly rent and was in excess of that allowed by law.

24       17.    As part of the deposit, the agreement specifically stated that the deposit would be

25  credited toward the purchase of a new manufactured home if the person purchased it through

26  GRANT PARK HOMES.  If the person did not purchase their manufactured home through

27  GRANT PARK HOMES, the deposit would be credited toward a lease fee of $10,000.00 which

28  was required for any lease that would exceed one year.  Some of the deposit agreements do not

1  specify where the $5,000.00 would be credited if a person purchased a home through a different

2  dealer. A reader would assume that the $5,000.00 would be lost if the Plaintiff chose to purchase

3  a home through a dealer other than Defendants.

4       18.    Plaintiffs subsequently entered into lease agreements which were for varying

5  terms of one year or more which was prepared by Defendants. Regardless of whether the lease

6  was for one year or more, the $10,000 deposit was required and was a unilateral mandatory

7  condition to Plaintiffs staying at the Park. Further, many of the Plaintiffs were not informed of

8  the $10,000.00 requirement or what it was for until after they had purchased their homes and/or

9  at close of escrow.

10       19.    Virtually all of the Plaintiffs purchased their homes from Defendants. The

11  purchase was not pursuant to a lawful purchase agreement, but was set forth in a document

12  prepared by Defendants that did not fulfill the statutory requirements. Among other things the

13  purchase agreement failed to identify the components of the homes, specify the items which were

14  to be provided, Defendants added items after execution by Plaintiffs without Plaintiffs' consent,

15  failed to include the warranties required by law and contained various other omissions in

16  violation of law.

17       20.    Regardless of whether the Plaintiffs paid their $5,000 deposit at purchase of their

18  homes from Defendants, they were not given the credit on their purchase and Defendants directly

19  debited the $10,000.00 out of escrow as a charge which was not described to Plaintiffs in the

20  contract or at escrow.

21       21.    The purchase agreement designated Defendant GRANT PARK DEVELOPMENT

22  aka GRANT PARK CONSTRUCTION as the installer of the manufactured homes.

23       22.    Defendants GRANT PARK DEVELOPMENT aka GRANT PARK

24  CONSTRUCTION failed to properly and timely install Plaintiffs' homes causing significant

25  damage to the homes and significant delay in move in which has injured each Plaintiff in varying

26  amounts.

27       23.    Throughout the last three years the park has not been properly maintained such

28  that it has experienced severe flooding in the common areas as well as Plaintiffs' individual .

1  spaces.

2      24.      The improper maintenance has caused damage to Plaintiffs' homes, prohibit their

3  use of the park and their homes and otherwise affected their right to quite enjoyment of their lots.

4      25.      Defendants, in doing the acts alleged herein, did them in concert with one another

5  an in conjunction and conspiracy with each other with the purpose of gaining a financial benefit

6                              **FIRST CAUSE OF ACTION**

7                              **(Strict Liability All Defendants)**

8      26.      Plaintiffs reallege and incorporate herein by reference each and every allegation

9  contained in each and every paragraph of this Complaint, and further allege:

10      27.      Defendants, and each of them, intended that the homes within the Project would

11  be sold to members of the public and would be used by members of the public for single family

12  residential purposes.  Defendants, and each of them, knew or should have known that the

13  purchasers of homes would rely upon the skill and judgment of Defendants in the development,

14  construction, installation, of said homes.

15      28.      Since completion, said Project developed latent defects not apparent by reasonable

16  inspection at the time of purchase, including, but not limited to, the following construction

17  defects:

18          a.      Drainage systems were improperly designed and/or constructed and/or

19  built out of defective materials;

20          b.      Basic design components were omitted and/or improperly installed and/or

21  built out of defective materials;

22          c.      The foundation systems were improperly designed and/or constructed

23  and/or built out of defective materials;

24          d.      The homes were improperly installed causing damage to the homes;

25          e.      Defective concrete materials and/or workmanship which has caused

26  property damage to Plaintiffs' homes;

27          f.      Improper grading and/or drainage which has caused damage to Plaintiffs'

28  homes;

Complaint for Damages                    -5-                    Bent v. Grant Park

1       g.     Defective landscaping materials and/or workmanship which has caused

2 damage to Plaintiffs' homes;

3       h.    Improper construction of the decks and brick work which has caused

4 damage to Plaintiffs' homes.

5     29.    The construction defects alleged herein were latent defects not apparent from

6 reasonable inspection when the Plaintiffs purchased their respective homes in the Project.

7 Plaintiffs discovered the defects and damages herein complained of within the past three (3)

8 years, and could not reasonably have discovered said defects and damages sooner.

9     30.    Plaintiffs are informed and believe, and thereon allege that as a direct and

10 proximate result of the above-described defects, Plaintiffs have suffered damages in a sum in

11 excess of the jurisdictional minimum of this Court, which damages represent the costs of repair

12 of said defects and any injury to person or property that resulted from said defects.

13     31.    Plaintiffs are further informed and believe, and thereon allege that as a direct and

14 proximate result of the above-alleged defects, Plaintiffs have suffered damages, said damages

15 including the diminution in value to their interest in the Project and damages to their separate

16 homes and personal property within the Project.

17     32.    As a direct and legal result of the above alleged defects, Plaintiffs have suffered

18 and will continue to suffer loss of use and enjoyment of the Project and their individual homes

19 therein, in an amount subject to proof at the time of trial.

20              **SECOND CAUSE OF ACTION**

21          **(Breach of Implied Warranty all Defendants)**

22     33.    Plaintiffs reallege and incorporate herein by reference each and every allegation

23 contained in each and every paragraph of this Complaint, and further allege:

24     34.    By reason of and in connection with the contract for construction, sale and transfer

25 of the homes to Plaintiffs, Defendant impliedly warranted that said homes and the appurtenances

26 thereto were fit for a particular purpose, were of merchantable quality, and were in a safe and

27 habitable condition.

28     35.    Plaintiffs are informed and believe, and thereon allege that the homes are not fit

1　for single-family residential purposes, are not of merchantable quality, and are not in a safe and

2　habitable condition. Within the past four (4) years, Plaintiffs have discovered that the warranties

3　of Defendant were false. Plaintiffs, promptly upon discovery of such breach of implied warranty,

4　gave appropriate notification of such breach.

5　　　　36.　　　Plaintiffs requested Defendants to comply with the warranty for the defects.

6　Defendants responded with promises of repairs, statements that the problems were not defects,

7　and/or site specific "band-aid" repairs which were represented as complete and adequate repairs.

8　Defendants, however, despite its representations which were in fact false and intended to prevent

9　Plaintiffs from seeking legal action against Defendants, refused to actually correct the defective

10　condition and associated damage.

11　　　　37.　　　Defendant has refused to make the repairs as required by the contract and/or make

12　independent repairs in breach of the express/implied warranty.

13　　　　38.　　　As a direct and proximate result of said breach of implied warranty, Plaintiffs

14　have been damaged in an amount equal to the cost to repair of their homes. The full extent and

15　nature of said damages are not presently ascertained. Plaintiffs are informed and believe, and

16　thereon allege that the total amount of said damages is a sum in excess of the jurisdictional

17　minimum of this Court.

18　　　　39.　　　As a further direct and proximate result of the above-alleged breach of implied

19　warranty, Plaintiffs have been damaged by the diminution of value of their homes.

20　　　　　　　　　　　　**THIRD CAUSE OF ACTION**

21　　　　　　　　　　**(Breach of Express Warranty all Defendants)**

22　　　　40.　　　Plaintiff incorporates the above allegations as if fully alleged herein and further

23　alleges as follows.

24　　　　41.　　　Each of the contracts alleged herein provide for a warranty that the materials and

25　equipment furnished pursuant to the contract will be of good quality and new and that the work

26　performed will be free from defects and will conform with the requirements of the contract

27　documents. Further, the contracts expressly warrant that the work will be fit for the particular

28　intended use of the project.

1    42    Plaintiffs requested Defendants to comply with the warranty for the defects.

2  Defendants responded with promises of repairs, statements that the problems were not defects.

3  and/or site specific "band-aid" repairs which were represented as complete and adequate repairs.

4  Defendants, however, despite its representations which were in fact false and intended to prevent

5  Plaintiffs from seeking legal action against Defendants, refused to actually correct the defective

6  condition and associated damage.

7    43.    Defendants' breach of the express warranties damaged Plaintiffs.  The damages

8  include, but are not limited to, costs of repair, loss of value, loss of use of portions of the Project.

9  investigation costs, inspection costs, and attorneys' fees all to an extent and in an amount to be

10  proven at trial.

11                    **FOURTH CAUSE OF ACTION**

12                    **(Breach of Contract all Defendants)**

13    44.    Plaintiffs reallege and incorporate herein by reference each and every allegation

14  contained in each and every paragraph of this Complaint, and further allege:

15    45.    Plaintiffs and Defendant entered into a written contract wherein Plaintiff would be

16  delivered a home installed with the component parts agreed upon and paid for by Plaintiffs

17    46.    Plaintiffs fully performed under the contract providing the consideration agreed

18  upon and fulfilling the other conditions set forth in the contract.

19    47.    Defendant, however, did not perform under the contract in that Defendant failed

20  to provide the property in the condition represented at the time of formation of the contract,

21  failed to complete the homes, failed to perform the work in a workmanlike manner, failed to

22  supervise the subcontractors promised, failed to provide the homes in a condition and in the

23  times agreed upon, and provided a property with the defects alleged herein.

24    48.    Such breaches of contract damaged Plaintiffs in an amount and to an extent to be

25  proven at trial.

26                    **FIFTH CAUSE OF ACTION**

27                    **(Negligence Against all Defendants)**

28    49.    Plaintiffs reallege and incorporate herein by reference each and every allegation

1    contained in each and every paragraph of this Complaint, and further allege:

2        50.      Plaintiffs are informed and believe, and thereon allege that Defendants, and each

3    of them, negligently failed to use reasonable care in the installation of the Plaintiffs' homes

4        51.      Said Defendants, and each of them, were under a duty to exercise ordinary care in

5    said installation and construction and to perform such work in a timely and workmanlike manner.

6        52.      Plaintiffs are informed and believe, and thereon allege that said Defendants

7    negligently performed such installation and construction work.

8        53.      Plaintiffs discovered said damage and negligent design and construction within

9    the past three (3) years, and could not have reasonably discovered Defendants' said negligent

10   conduct prior to that date.

11       54.      As a direct and proximate result of the negligence of Defendants, and each of

12   them, Plaintiffs have been damaged, in an amount equal to the cost to repair each of Plaintiffs'

13   homes. Plaintiffs are informed and believe, and thereon allege that the total damages is a sum in

14   excess of the jurisdictional minimum of this Court.

15       55.      As a further direct and proximate result of the above alleged negligence, Plaintiffs

16   have suffered a diminution in value to their respective properties.

17       56.      As a direct and legal result of the above alleged negligence, Plaintiffs have

18   suffered and will continue to suffer loss of use and enjoyment of the Project and their individual

19   homes therein, in an amount subject to proof at the time of trial.

20                   **SIXTH CAUSE OF ACTION**

21         **(BREACH OF H&S CODE 18035 ET SEQ. Against All Defendants)**

22       57.      Plaintiffs reallege and incorporate herein by reference each and every allegation

23   contained in each and every paragraph of this Complaint, and further allege:

24       58.      Virtually all of the Plaintiffs purchased their homes from Defendants. The

25   purchase was not pursuant to a lawful purchase agreement but was set forth in a document

26   prepared by Defendants that did not fulfill the statutory requirements. Among other things the

27   purchase agreement failed to identify the components of the homes, specify the items which were

28   to be provided. Defendants added items after execution by Plaintiffs without Plaintiffs' consent.

1   failed to include the warranties required by law and contained various other omissions in

2   violation of law. Further, Defendant failed to comply with the law regarding disputed and

3   retention in escrow further damaging Plaintiffs.

4         59.   Defendants' failure to comply with the statutory requirements have damaged

5   Plaintiffs resulting in them not receiving the homes equipped as paid for by Plaintiffs and

6   including additional charges for items not desired.

7                     **SEVENTH CAUSE OF ACTION**

8                 **(FRAUD AGAINST ALL DEFENDANTS)**

9         60.   Plaintiffs reallege and incorporate herein by reference each and every allegation

10   contained in each and every paragraph of this Complaint, and further allege:

11         61.   By way of its relationship with Plaintiffs, Defendants' actions were fraudulent

12   causing Plaintiffs' significant damages. The fraud included:

13                 a.       Defendants' requirement of the payment of $10,000 and the stated

14                         purposes and absent of credit for said payments;

15                 b.       Defendants' unilateral modification by Defendants Joel Burger of items to

16                         be included in the purchase agreement;

17                 c.       Defendants' representations of time of delivery and completion of the

18                         installation of the homes which in fact knowingly false.

19         62.   Such fraudulent actions and statements were made for the purpose of inducing

20   Plaintiffs to purchase the homes from Defendants, commit Plaintiffs to residency at the Park and

21   increase the profits of Defendants arising out of the relationship.

22         63.   Defendants' fraud has damaged Plaintiffs including the loss of the $10,000.00, the

23   charges for products not agreed upon and the damages sustained from the delays caused by

24   Defendants.

25                     **EIGHTH CAUSE OF ACTION**

26         **(BREACH OF COVENANT OF QUIET ENJOYMENT OF TENANCY)**

27         64.   Plaintiffs reallege and incorporate herein by reference each and every allegation

28   contained in each and every paragraph of this Complaint, and further allege:

65.     Throughout the last three years the Park has not been properly maintained such that it has experienced severe flooding in the common areas as well as Plaintiffs' individual spaces as required by the California Civil Code.

66.     Defendants have failed to properly construct and maintain other areas of the Park including the driveways, roadways and drainage areas as required by the California Civil Code.

67.     The improper maintenance has caused damage to Plaintiffs' homes, prohibited their use of the Park and their homes and otherwise affected their right to quiet enjoyment of their lots.

68.     Plaintiffs have provided statutory notice of the Defendants' failure to properly maintain the park and the Park has failed to correct the condition.

69.     Defendants' failure to properly maintain the park has been negligent and willful.

70.     Said improper maintenance has damaged Plaintiffs including damaging their homes and limiting their ability to access and leave their homes,

71.     Plaintiffs seek statutory, consequential and general damages from Defendants from the failure to maintain the park in an amount an to an extent to be proven at trial.  Further, Plaintiffs seek an injunction to compel Defendants to maintain the park and prevent the flooding alleged herein.

## NINTH CAUSE OF ACTION

### (UNLAWFUL, UNFAIR AND FRAUDULENT BUSINESS PRACTICES
### B&P CODE SECTION 17200 AGAINST ALL DEFENDANTS)

72.     Plaintiffs reallege and incorporate herein by reference each and every allegation contained in each and every paragraph of this Complaint, and further allege the following:

73.     In committing the acts specified above, Defendants have acted and continue to act unlawfully and unfairly through the lease and purchase agreements alleged above.

74.     In committing the acts specified above, all Defendants have acted and continue to act fraudulently by making the false and/or misleading representations about the purchase and the lease of the lot.

75.     Defendants' conduct is immoral, unethical, oppressive, and unscrupulous, and

1  has injured and is likely to continue to substantially injure Plaintiffs.

2       76.     In committing the acts alleged herein, Defendants are in violation of the California

3  Unfair Competition Act, Business and Professions Code § 17200 et seq. entitling Plaintiffs to

4  injunctive relief, restitution for the cost of obtaining a valid express warranty on the homes, civil

5  penalties, punitive damages, attorneys fees and cost of the litigation.

6       WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as

7  follows:

8       1.     For special damages according to proof, including but not limited to, cost to

9  repair, loss of profits, loss of market value, loss of financing, loss of investment and out-of-

10  pocket expenses;

11      2.     For attorneys fees and costs of suit incurred herein;

12      3.     For interest at the legal rate;

13      4.     For a temporary and permanent injunction; and

14      5.     For such other and further relief as the Court may deem just and proper.

15  Dated: September 27, 2007                         SALINGER VAN DYKE

16

17                                       By:_____
                                            GLEN A. VAN DYKE, ESQ.
18                                          Attorney for Plaintiffs

19

20

21

22

23

24

25

26

27

28

Complaint for Damages                    -12-                    Bent v. Grant Park

1  GLEN A. VAN DYKE, ESQ., SBN: 183796
   **SALINGER VAN DYKE**
2  **Attorneys at Law**
   9132 Elk Grove Boulevard
3  Elk Grove, California 95624
   Telephone: (916) 686-5788
4  Fax      : (916) 686-5397

5  Attorneys for Plaintiffs

```
            F I L E D
     YOLO SUPERIOR COURT

         MAY 2 7 2008

     By _____
              Deputy
```

6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                      **FOR THE COUNTY OF YOLO**

10

11 ALBERT BENT, EVELYN BENT,              CASE NO. CV07-2197
   THOMAS GRAF, MICHELLE GRAF,
12 EDWIN HEENEY, MARY HEENEY,             ~~PROPOSED~~ ORDER ON
   PETER FRANZEN, SANDRA FRANZEN,         STIPULATION TO CONSOLIDATE
13                                        ACTIONS
                Plaintiffs,
14
15 vs.

16 GRANT PARK HOMES, GRANT PARK
   DEVELOPMENT, COUNTRY FAIR
17 ESTATES, MELVIN SMITH, JERRY
   BURGER, JOEL BURGER, and DOES 1
18 THROUGH 300, INCLUSIVE,

19              Defendants.

20 _____/

21          GOOD CAUSE APPEARING,

22          IT IS ORDERED that the action entitled *Bent v. Grant Park Homes, et al.* Case No.

23 CV07-2197 be consolidated with *Anderson v. Grant Park Homes, et al.* Case No. CV06-2070.

24 Further, the lead case shall be *Anderson v. Grant Park Homes, et al.* Case No. CV06-2070.

25

26 Dated: _5\27\08_                  **Kathleen M. White**
                                    _____
27                                  Judge of The Superior Court

28

Order to Consolidate              -1-                Bent v. Grant Park

EXHIBIT D

CIV-130

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Glen A. Van Dyke   (Bar # 183796)<br>Van Dyke Law Group, A Professional Corporation<br>12277 Soaring Way, Suite 206<br>Truckee, CA 96161<br>TELEPHONE NO. (530) 587-2130   FAX NO. *(Optional)* (530) 587-2829<br>E-MAIL ADDRESS *(Optional)* gvandyke@vandykelawgroup.com<br>ATTORNEY FOR *(Name)* Donald Anderson, Joyce Anderson, et al., Plaintiffs | FOR COURT USE ONLY<br><br>F I L E D<br>YOLO SUPERIOR COURT<br><br>OCT 1 3 2011<br><br>By B. QUINTERO<br>Deputy |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF YOLO<br>STREET ADDRESS 725 Court Street, Room 103<br>MAILING ADDRESS 725 Court Street, Room 103<br>CITY AND ZIP CODE Woodland 95695<br>BRANCH NAME Civil | |
| PLAINTIFF/PETITIONER Donald Anderson, et al.<br>DEFENDANT/RESPONDENT Grant Park Homes, et al. | |

| NOTICE OF ENTRY OF JUDGMENT<br>OR ORDER | CASE NUMBER<br>CV06-2070 |
|---|---|
| *(Check one):*  [X] **UNLIMITED CASE**      [ ] **LIMITED CASE**<br>(Amount demanded              (Amount demanded was<br>exceeded $25,000)              $25,000 or less) | |

TO ALL PARTIES :

1. A judgment, decree, or order was entered in this action on *(date)*:  September 30, 2011

2. A copy of the judgment, decree, or order is attached to this notice.

Date:  October 11, 2011

Glen A. Van Dyke
(TYPE OR PRINT NAME OF  [X] ATTORNEY  [ ] PARTY WITHOUT ATTORNEY)                    (SIGNATURE)

Form Approved for Optional Use
Judicial Council of California
CIV-130 [New January 1, 2010]

**NOTICE OF ENTRY OF JUDGMENT OR ORDER**

www.courtinfo.ca.gov

LexisNexis® Automated California Judicial Council Forms

CIV-130

| | |
|---|---|
| PLAINTIFF/PETITIONER Donald Anderson, et al. | CASE NUMBER |
| DEFENDANT/RESPONDENT Grant Park Homes, et al. | CV06-2070 |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
## NOTICE OF ENTRY OF JUDGMENT OR ORDER

*(NOTE: You cannot serve the Notice of Entry of Judgment or Order if you are a party in the action. The person who served the notice must complete this proof of service.)*

1. I am at least 18 years old and not a party to this action. I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify)*:

   12277 Soaring Way, Suite 206
   Truckee, CA 96161

2. I served a copy of the *Notice of Entry of Judgment or Order* by enclosing it in a sealed envelope with postage fully prepaid and *(check one)*.

   a. ☐ deposited the sealed envelope with the United States Postal Service

   b. ☒ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Entry of Judgment or Order* was mailed:

   a. on *(date):* October 11, 2011

   b. from *(city and state):* Truckee, CA

4. The envelope was addressed and mailed as follows:

   a. Name of person served:
   Charles Daugherty
   Street address: Post Office Box 88
   City: San Miguel,
   State and zip code: California 93451

   c. Name of person served:
   Street address:
   City:
   State and zip code:

   b. Name of person served:
   Street address:
   City:
   State and zip code:

   d. Name of person served:
   Street address:
   City:
   State and zip code:

   ☐ Names and addresses of additional persons served are attached *(You may use form POS-030(P).)*

5. Number of pages attached __25__

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: October 11, 2011

| | |
|---|---|
| Carol L Ritter | *Carol L Ritter* |
| (TYPE OR PRINT NAME OF DECLARANT) | (SIGNATURE OF DECLARANT) |

Page 2 of 2

CIV-130 [New January 1, 2010]

## NOTICE OF ENTRY OF JUDGMENT OR ORDER

*Lerts News & Automated California and Judicial Council Forms*

GLEN A. VAN DYKE, ESQ., SBN: 183796
VAN DYKE LAW GROUP
A Professional Corporation
12277 Soaring Way, Suite 206
Truckee, California 96161
Telephone: (530) 587-2130
Fax       : (530) 587-2829

Attorneys for Plaintiffs

```
                                      F I L E D
                              YOLO SUPERIOR COURT

                                   SEP 30 2011

                              by ........ E. ENDO ......
                                          DEPUTY
```

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF YOLO

DONALD ANDERSON, et al.,

      Plaintiffs,

vs.

GRANT PARK HOMES, GRANT PARK
DEVELOPMENT, COUNTRY FAIR
ESTATES, MELVIN SMITH, JERRY
BURGER, JOEL BURGER, and DOES 1
THROUGH 300, INCLUSIVE,

      Defendants.

CASE NO. CV06-2070

[PROPOSED] STIPULATED JUDGMENT

JUDGMENT ON STIPULATION OF THE PARTIES AND
APPROVAL OF THE COURT

    Plaintiffs Donald Anderson, et al., and the Defendant Grant Park Development, Inc., have

entered into a Settlement Agreement, Assignment, and Agreement To Entry of a Stipulated

Judgment (Settlement) of the above matter on September 23 and 26, 2011, which settlement calls

for entry of a stipulated judgment. A true and correct copy of the Settlement is attached hereto

and incorporated into and expressly made part of this Stipulated Judgment. Plaintiffs are

represented by Glen Van Dyke, Van Dyke Law Group. Grant Park Development, Inc. is

represented by Charles V. Daugherty.

    WHEREUPON, after consideration of all matters affecting the Settlement, and the

[Proposed] Stipulated Judgment       -1-       Anderson v. Grant Park

stipulation of the parties to enter judgment in favor of the Plaintiffs, it is ordered adjudged and decreed, that each of the Plaintiffs listed below shall and do have and recover from Grant Park Development, Inc., a Judgment in the amounts listed below next to said Plaintiffs' name:

| Name of Plaintiff(s) | Judgment Amount |
|---|---|
| Donald Anderson | $ 65,451.89 |
| Alfred and Jo Lynne Bailey | $ 83,010.56 |
| Everett and Mary Bair | $ 134,631.45 |
| Albert and Evelyn Bent | $ 80,621.81 |
| Betty Bradley | $ 56,963.00 |
| David and Phyllis Duncan | $ 85,051.92 |
| Dennis and Mammie Ebanks | $ 74,452.70 |
| Gerald and Darlene Ellingson | $ 12,500.00 |
| Vern and Paula Favrat | $ 52,197.74 |
| Sandra Marsh aka Sandra Franco | $ 91,906.27 |
| Peter and Sandra Franzen | $ 93,288.33 |
| Paul and Patricia Gentry | $ 98,794.74 |
| Jeff and Anna Goodall | $ 58,964.04 |
| Gwen Gordon | $ 89,866.96 |
| Thomas and Michelle Graf | $ 82,704.12 |
| Robert and Patricia Harris | $ 68,039.93 |
| Edwin and Mary Heeney | $ 109,756.37 |
| Ward and Gloria Hollowell | $ 73,239.85 |
| Gracian and Mary Hulsey | $ 76,915.16 |
| Larry and Kris Kratzer | $ 94,420.68 |
| James and Mary Ann Marion | $ 64,901.79 |
| Marylou Morris | $ 76,653.08 |
| Peter Morris | $ 54,922.28 |
| Barbara Raymos | $ 66,166.46 |

[Proposed] Stipulated Judgment                    -2-                    Anderson v. Grant Park

| | |
|---|---|
| David and Bettye Sheets | $ 64,753.69 |
| James and Joyce Sumner | $ 78,682.83 |
| Phyllis Weber | $ 79,395.03 |

In addition to the above, each of the Plaintiffs, with the exception of Ellingson, will receive a *pro rata* distribution of $1,305,592.01 which is comprised of cost of repair for specified common areas ($ 147,650.00), attorneys fees ($ 125,000.00), costs ($ 42,179.55), investigative costs through April 6, 2009 ($ 290,762.46), and site flooding and drainage repairs ($700,000.00).

The total amount of the judgment is $3,373,843.91.

IT IS SO ORDERED.

Dated: ___9/30/11___

_____
DANIEL A. McGUIRE
Judge of the Superior Court of California, County of Yolo

[Proposed] Stipulated Judgment        -3-        Anderson v. Grant Park

### SETTLEMENT AGREEMENT, ASSIGNMENT, AND AGREEMENT TO ENTRY OF A STIPULATED JUDGMENT

This Settlement Agreement, Assignment, and Agreement to Entry of a Stipulated Judgment ("Settlement") is made and entered into effective the date of the last signature hereto, by and between:

1.    Donald Anderson; Alfred Bailey; Jo Lynne Bailey; Everette Bair; Mary Bair; Albert Bent; Evelyn Bent; Betty Bradley; Betty Bradley; David Duncan; Phyllis Duncan; Dennis Ebanks; Mammie Ebanks; Gerald Ellingson; Darlene Ellingson; Vern Favrat; Paula Favrat; Sandra Marsh aka Sandra Franco; Peter Franzen; Sandra Franzen; Paul Gentry; Patricia Gentry; Jeff Goodall; Anna Goodall; Gwen Gordon; Thomas Graf; Michelle Graf; Robert Harris; Patricia Harris; Edwin Heeney; Mary Heeney; Ward Hollowell; Gloria Hollowell; Gracian Hulsey; Mary Hulsey; Larry Kratzer; Kris Kratzer; James Marion; Mary Ann Marion; Marylou Morris; Peter Morris; Barbara Raymos; David Sheets; Bettye Sheets; James Sumner; Joyce Sumner; and Phyllis Weber (hereinafter collectively referred to as "Plaintiffs");

2.    Grant Park Homes; Grant Park Development, Inc.; Grant Park Development, Inc. dba Country Fair Estates; Country Fair Estates; Melvin Smith; Jerry Burger; and Joel Burger (hereinafter collectively referred to as "Grant Park Defendants").

The parties listed above are collectively referred to hereinafter as the "parties" and individually as "party" or "Plaintiffs" and "Grant Park Defendants" for purposes of this Settlement. Grant Park Development, Inc. is the only defendant referred to in the Stipulated Judgment Upon Good Faith Settlement it being the intent of the parties that the judgment be against Grant Park Development, Inc., alone. Upon approval by the court in this action of a good faith motion under Code of Civil Procedure and execution by said court of the Stipulated Judgment Upon Good Faith Settlement, Plaintiffs will dismiss this action, with prejudice, against all defendants except Grant Park Development, Inc..

The parties will use best efforts to maintain the confidentiality of this agreement. This does not prohibit and is not intended to prohibit Plaintiffs from disclosing the contents of this agreement while pursuing any carrier or as otherwise necessary to Plaintiffs attempts to secure recovery of all damages associated with this action.

MS

# I.

## RECITALS

Plaintiffs are residents and/or owners of units at Country Fair Estates Mobile Home Park ("the Park").

Grant Park Defendants are the owners and/or operators of the Park; and/or persons or entities which sold and/or installed manufactured homes owned by certain plaintiffs at the Park; and/or persons responsible for operation and maintenance of the Park.

Plaintiffs have sued Grant Park Defendants in *Anderson et al. v. Grant Park Homes, et al*, Superior Court for the County of Yolo, Case No. CV06-2070 (hereafter, "the ACTION"), relative to claims including, but not limited to damages, penalties, costs, attorney fees, and injunctive relief arising from the sale, construction and/or installation of manufactured homes and other appurtenant fixtures, as well as the maintenance and operation of the Park.

Grant Park Defendants tendered defense to certain liability insurers for Grant Park Development and Country Fair Estates. Effective the date of this agreement the following insurers have taken the following positions in response to the Defendants' tender of defense and indemnity:

*Union American Insurance Company & Zurich (Zurich)*- Zurich participated in the defense and indemnity of the Action and entered into an agreement with certain Plaintiffs whose homes were assembled during Zurich's coverage period only. That agreement is made a part of this Settlement and is attached hereto as Exhibit A

*Insurance Corporation of New York*  · In receivership.

*EMC* -- Agreed to defend under reservation of rights and entered into an agreement with the Plaintiffs and Grant Park Defendants which is made a part of this Settlement and is attached hereto as Exhibit B.

*Century Surety Company (Century)* – Grant Park Development tendered the ACTION to Century for the purpose of providing a defense and indemnity to the applicable insureds.  Century provided a written denial of defense and indemnity

and has not participated in the ACTION.

*Nationwide Insurance Company and Allied Mutual Insurance Company* (Allied) - Agreed to defend under reservation of rights but claimed little or no indemnity obligation. Participated in Action and provided defense until April, 2010, and then it withdrew from defense claiming no coverage or potential for coverage. On May 18, 2010, Plaintiffs offered to settle all remaining liability in the Action for the sum of $ 1,800,000. Nationwide/Allied rejected the offer to compromise and made no counter offer.

Other insurance carriers, brokers or agents may exist who have coverage or may have coverage for the claims included in the ACTION. Knowledge of their position is currently unknown to Plaintiffs.

II.

## CONSIDERATION TENDERED AND RIGHTS RELEASED

1.   The Parties have settled the entire ACTION through this Settlement. The ACTION has been in litigation since 2006 and the parties are desirous of terminating the ACTION. The parties wish to avoid the risks, expenses and personal exposure presented by a potential verdict after trial.

2.   In the prior Agreements with EMC and Zurich, Plaintiffs sought the consideration offered in return for the Agreements by EMC, Unionamerica and Zurich, and the Grant Park Defendants. Grant Park Defendants sought to eliminate the possibility of liability for damages or other obligations not covered by the insurance policies identified above in the Recitals section in the event the ACTION proceeded to judgment ,or, the Grant Park Defendants were obligated to proceed to defend the ACTION without the benefit of a defense provided by or indemnification from the remaining insurance carriers, and, in particular, Allied and Century. Grant Park Defendants believe that both Allied and Century owe a duty to Grant Park Defendants to defend the ACTION and to indemnify Grant Park Defendants in the event of an adverse judgment. Plaintiffs sought an assignment of any and all rights Grant Park Defendants have or may have against the several insurers for damages, tax costs, including attorneys fees, and for any liability established against Grant Park Defendants. The parties reaffirm the consideration noted above.



M9

3.    The parties, including the several insurance carriers except Century, engaged in discovery, mediation and settlement negotiations. Plaintiffs provided Grant Park Defendants with documentation of damages and costs, including the cost of repair (as of April, 2009, and updated in March, 2010), investigative fees (*Stearman v. Centex Homes* damages), costs and attorneys fees as of March, 2010.

4.    Without this agreement, Grant Park Defendants will have to proceed to trial without the benefit of a defense from any of the insurers. The parties have exchanged information relative to the liability of the Grant Park Defendants and the potential damages upon the liability.

5.    Therefore, in consideration of the recitals and mutual covenants and agreements set forth herein, the adequacy of which is hereby acknowledged, the parties hereby agree to the following:

A.    Grant Park Defendants agree to settle this matter with the Plaintiffs for the sum of three million five hundred sixty-seven thousand seven hundred forty-two dollars ($3,373,843.91), which is the total of the cost of repair, investigation fees, costs, and attorney's fees as of March 10, 2010. Plaintiffs waive additional damages which they may have been entitled to at the time of trial including damages which were under investigation as of March 10, 2010. Grant Park Defendants agree to forthwith enter into a stipulated judgment in a form to be approved by the parties and to cooperate in the bringing of a motion to approve this settlement pursuant to Code of Civil Procedure 877.6, et seq..

B.    Plaintiffs reaffirm the "COVENANT NOT TO EXECUTE ON JUDGMENT" (the "Covenant") attached hereto as part of the Agreement with EMC, and pursuant to the Covenant refrain from enforcing any claim for relief in the ACTION against the Grant Park Defendants, EMC, or Zurich. Plaintiffs reserve the right to pursue enforcement of the stipulated judgment against all others.

C.    Plaintiffs further agree that they will not attempt to enforce any claim for relief against the Grant Park Defendants, EMC, or Zurich in any other action or proceeding for claims related to or arising out of the ACTION which Plaintiffs have alleged, attempted to allege or could have alleged against Grant Park Defendants prior to final execution of this Agreement. Plaintiffs further agree that they will not record any judgment against the Grant Park Defendants in this action.

D.    Grant Park Defendants hereby assign to Plaintiffs any claim or right

they may have or hereafter acquire against Allied Insurance, Nationwide Mutual
Insurance Company, Century Insurance Company, any other insurance company
(except EMC and Zurich), and any insurance broker or agent, for recovery of all or
any part of the consideration agreed to by Grant Park Defendants pursuant to the
Settlement, and specifically the sum of $3,373,843.91, which includes any claim or
right Grant Park Defendants may have or hereafter acquire to recover from any
insurer or any costs which may be taxed against them in the ACTION. This
assignment includes any claim the Grant Park Defendants may have as a result of
other insurers, agents or brokers for failures which may give rise to liability arising
out of the claims set forth in the ACTION, including but not limited to breach of
contract, negligence and breach of fiduciary duty owed to the Grant Park
Defendants.

### III.

### MISCELLANEOUS TERMS

2.      Representations and Warranties. Each party to this Settlement makes
the following representations and warranties with the understanding that each other
party hereto enters into this Settlement in reliance upon each of these
representations and warranties, and that without these representations and
warranties, no party would enter into this Agreement.

    A.      Each party has not previously sold, transferred, conveyed, assigned,
hypothecated or subrogated any of the rights, defenses, claims or
causes of action released or assigned in this Settlement, and hereby
expressly waives all rights he/it has or may have to do so except as
expressly set forth herein.

    B.      Each party has been fully advised by his/its attorneys concerning the
effect of this Agreement and that each party understands, without
reservation or doubt, the effect and finality of this Settlement.

3.      Warranty of Authorized Signatories. Each of the signatories hereto
warrants and represents that he or she is competent and authorized to enter into this
Settlement on behalf of the party for whom he or she purports to sign.

4.      Compromise. This Settlement is the result of a compromise and is
entered into by the Grant Park Defendants and Plaintiffs in order to end the
ACTION.

5.    Construction of Settlement. This Settlement is the product of negotiation and preparation by and among each party and its respective attorneys. All parties acknowledge and agree that this Agreement shall not be deemed prepared or drafted by one party or another, or the attorneys for one party or another, and shall be construed accordingly

6.    Governing Law. This Settlement shall be interpreted in accordance with and governed in all respects by the substantive laws of the State of California. All disputes arising out of this Agreement shall be submitted to the exclusive jurisdiction of a state or federal court located in the State of California only, and no other, and each party irrevocably consents to personal jurisdiction and waives all objections thereto.

7.    Severability. If any provision or any part of any provision of this Settlement shall for any reason be held to be invalid, unenforceable or contrary to public policy or any law, then the remainder of this Settlement shall not be affected thereby and shall remain in full force and effect; provided, however, that any such provision or part of any provision held to be invalid, unenforceable or contrary to public policy or any law is not essential to any party's enjoyment of any material benefit bargained for hereunder.

8.    Counterparts. This Settlement may be executed in counterparts and all so executed shall constitute one Settlement which shall be binding upon all parties hereto, notwithstanding that the signatures of the parties' designated representatives do not appear on the same page.

9.    Entire Agreement. This Settlement, the attached Covenant and the Stipulated Judgment contain the entire understanding among the parties. This Settlement may be modified only in writing and only if signed by all parties hereto. There are no representations, warranties, agreements, arrangements, undertakings, oral or written, between or among the parties hereto relating to the terms and conditions of this Settlement which are not fully expressed in this Settlement and the attached Covenant.

10.    Notices. All notices, requests or other communications required or permitted hereunder shall be given in writing by hand delivery or by registered, certified or US mail to the party to at the address below:

To Defendants Grant Park Development, Inc., Grant Park

Development, Inc. dba Country Fair Estates, Country Fair
Estates, Grant Park Homes, Melvin smith, Jerry Burger,
and Joel Burger:

Charles Daugherty
Post Office Box 88
San Miguel, California 93451

To Plaintiffs:
Glen Van Dyke
Van Dyke Law Group
12277 Soaring Way
Truckee, CA 96161

        WHEREFORE, the undersigned have executed this SETTLEMENT.

Accepted and Agreed to:

By the Plaintiffs:

By: _____            Dated: _____
        Glen Van Dyke
        Attorney for Plaintiffs

By Defendant Grant Park Development, Inc.

By: _____            Dated: 9/23/11
        Charles Daugherty
        Attorneys for Defendant Grant Park
        Development, Inc.

Grant Park Development, Inc.

By its: _____,  _____    Dated: _____

Grant Park Development, Inc. dba Country Fair Estates

By its: _____, _____   Dated: _____

Grant Park Homes

By its _____, _____   Dated: _____

Country Fair Estates

By its _____, _____   Dated: _____

Melvin Smith

_____   Dated: 9-23-11

Jerry Burger

_____   Dated: _____

Joel Burger

_____   Dated: _____

Approved as to form and content.

Dated: 7  28  1                    Van Dyke Law Group

                                   By: _____
                                       GLEN A. VAN DYKE,
                                       Attorneys for Plaintiffs

Dated: 9/23/11                     Law Office of Charles Daugherty

By: _____

CHARLES DAUGHERTY,
Attorneys for Defendants

By its: _____, _____   Dated: _____

Grant Park Homes

By its _____, _____   Dated: _____

Country Fair Estates

By its _____, _____   Dated: _____

Melvin Smith

_____   Dated: _____

Jerry Burger

_____   Dated: _____

Joel Burger

_____   Dated: 9/23/11

Approved as to form and content.

Dated: _____   *Van Dyke Law Group*

By: _____

GLEN A. VAN DYKE,
Attorneys for Plaintiffs

Dated: 9/23/11   *Law Office of Charles Daugherty*

Development, Inc. dba Country Fair Estates, Country Fair
Estates, Grant Park Homes, Melvin smith, Jerry Burger,
and Joel Burger:

Charles Daugherty
Post Office Box 88
San Miguel, California 93451

To Plaintiffs:
Glen Van Dyke
Van Dyke Law Group
12277 Soaring Way
Truckee, CA 96161

    WHEREFORE, the undersigned have executed this SETTLEMENT.

Accepted and Agreed to:

By the Plaintiffs:

By: _____          Dated: _____
    Glen Van Dyke
    Attorney for Plaintiffs

By Defendant Grant Park Development, Inc.

By: _____          Dated: 9/23/11
    Charles Daugherty
    Attorneys for Defendant Grant Park
    Development, Inc.

Grant Park Development, Inc.

By its: _____  Dated: 9-23-11

Grant Park Development, Inc. dba Country Fair Estates

By its: _____   Dated: 9·23-11

Grant Park Homes

By its _____   Dated: 9.23-11

Country Fair Estates

By its _____   Dated: 9.23-11

Melvin Smith


_____   Dated: _____

Jerry Burger


_____   Dated: 9. 23-11

Joel Burger


_____   Dated: _____

Approved as to form and content.

Dated: _____   *Van Dyke Law Group*


By:_____
GLEN A. VAN DYKE,
Attorneys for Plaintiffs

Dated: 9/23/11   *Law Office of Charles Daugherty*

## COVENANT NOT TO EXECUTE ON JUDGMENT

This Covenant Not to Execute On Judgment ("COVENANT") is made and entered into by and between the following plaintiffs on one hand, collectively referred to herein as "Plaintiffs":

Donald Anderson; Joyce Anderson; Alfred Bailey; Jo Lynne Bailey; Everette Bair; Mary Bair; Albert Bent; Evelyn Bent; Betty Bradley; Harold Bradley; Betty Bradley; David Duncan; Phyllis Duncan; Dennis Ebanks; Mammie Ebanks; Gerald Ellingson; Darlene Ellingson; Vern Favrat; Paula Favrat; Sandra Franco; Peter Franzen; Sandra Franzen; Paul Gentry; Patricia Gentry; Jeff Goodall; Anna Goodall; Gwen Gordon; Thomas Graf; Michelle Graf; Robert Harris; Patricia Harris; Edwin Heeney; Mary Heeney; Ward Hollowell; Gloria Hollowell; Gracian Hulsey; Mary Hulsey; Lila James; Larry Kratzer; Kris Kratzer; James Marion; Mary Ann Marion; Marylou Morris; Peter Morris; Larry Raymos; Barbara Raymos; David Sheets; Bettye Sheets; James Sumner; Joyce Sumner; and Phyllis Weber;

and the following defendants on the other hand, collectively referred to herein as "Defendants":

Grant Park Homes; Grant Park Development, Inc.; Country Fair Estates; Melvin Smith; Jerry Burger; Joel Burger.

The Plaintiffs and Defendants are collectively referred to herein as "the Parties".

## RECITALS

1.0     Plaintiffs have sued Defendants in *Anderson et al. v. Grant Park Homes, et al*, Superior Court for the County of Yolo Case No. CV06-2070 (hereafter, "the ACTION"); relative to claims including but not limited to damages, penalties and injunctive relief arising from the sale, construction and installation of manufactured homes and other appurtenant fixtures, as well as the development, maintenance and operation of a mobile home park.

2.0     Defendants have provided notice to, and demanded a defense and indemnity relative to the ACTION from their liability insurers. Defendants' insurers have either refused to defend and/or indemnify Defendants with respect to the claims against them in the Plaintiffs action; or have reserved their rights not to indemnify

one or more of Defendants for certain claims for relief by Plaintiffs in the ACTION.

NOW, THEREFORE, in consideration of the representations, promises and undertakings referenced herein, the adequacy of which the Parties hereby acknowledge and which includes payment of $300,000.00 by EMC to the Plaintiffs, the Parties agree as follows:

## 3.0   COVENANT NOT TO EXECUTE

3.1   Plaintiffs and each of them agree and covenant that Plaintiffs shall not attempt to execute or execute on the assets of Defendants or any of them with respect to any order, award, or judgment obtained against any of Defendants in the ACTION.

3.2   Plaintiffs and each of them further agree and covenant not to attempt to enforce any claims for relief against Defendants and/or EMC in any other action or proceeding for conduct related to or arising out of the ACTION which Plaintiffs have alleged, attempted to allege or could have alleged against Defendants prior to final execution of this Agreement, including but not limited to, claims which are presently unknown to Plaintiffs.

3.3   Plaintiffs and each of them further agree and covenant that Plaintiffs shall not attempt to obtain and/or enforce any non-monetary relief, including but not limited to injunctive relief, specific performance, and administrative relief; against any Defendant with respect to the ACTION.

3.4   Plaintiffs and each of them further agree and covenant not to attempt to obtain and/or enforce any non-monetary relief in any other action or proceeding against Defendants and/or EMC in any other action or proceeding for conduct related to or arising out of the ACTION which Plaintiffs have alleged, attempted to allege or could have alleged against Defendants prior to final execution of this Agreement, including but not limited to, injunctive relief, specific performance and administrative relief.

3.5     It is understood and agreed that this COVENANT extends only to the assets of Defendants, and specifically does not extend to benefits available under any insurance policy issued to Defendants, with the sole exception of Employers Mutual Casualty Company. Plaintiffs agree not to pursue recovery of any relief relative to the ACTION from Employers Mutual Casualty Company.

3.6     Defendants and each of them hereby agree to assign to Plaintiffs any right any of them may have to recover from any insurer (excepting only Employers Mutual Casualty Company) any costs which may be taxed against any of them in the ACTION.

## 4.0    REPRESENTATIONS AND WARRANTIES

Each of the Parties represents and warrants that this COVENANT and any related agreement or agreements are the product of arms length negotiation between adversarial parties and are not the product of fraud or collusion.

## 5.0    CERTIFICATION

THE UNDERSIGNED, HEREBY CERTIFY that they have read this entire COVENANT, and have had the terms used herein and consequences hereof explained by their attorney(s). The undersigned fully understand the terms and consequences of this COVENANT, and with knowledge thereof, have voluntarily executed this COVENANT.

WHEREFORE, the undersigned have executed this COVENANT.

Accepted and Agreed to:

By the Plaintiffs:

By: x _Donald Anderson_  2/4/2010          By: _Deceased_

Donald Anderson                              Joyce Anderson

Dated: _____

By _Alfred Bailey_   By _Jo Lynne Bailey_
Alfred Bailey                Jo Lynne Bailey

Dated: 2-4-10

By: _Everette Bair / NOT ON TITLE_   By: _Mary E. Bair_
Everette Bair                                 Mary Bair

Dated: 2/4/10

By: _____   By: _____
Albert Bent        Evelyn Bent

Dated: 2-4-10

By: _Betty Bradley_   By: _Harold Bradley_
Betty Bradley               Harold Bradley

Dated: 1-4-10

By: _David Duncan_   By: _Phyllis W Duncan_
David Duncan               Phyllis Duncan

Dated: FEB 8th 2010

4

By: _____     By: _____
Dennis Ebanks                 Mammie Ebanks

Dated: 2·4-10

By: _____     By: _____
Gerald Ellingson              Darlene Ellingson

Dated: _____

By. _____     By: _____
Vern Favrat                   Paula Favrat

Dated: 2/9/10

By: _____
Sandra Franco

Dated: 2-4-10

By: _____     By: _____
Peter Franzen                 Sandra Franzen

Dated: 2-9-10

By: _____     By: _____
Paul Gentry                   Patricia Gentry

Dated: 2-4-10

5

By: _____    By: x _____
    Jeff Goodall                      Anna Goodall

Dated: _____

By: _____
    Gwen Gordon

Dated: 2-16-10

By: _____    By: _____
    Thomas Graf                  Michelle Graf

Dated: 2/4/10

By: _____    By: _____
    Robert Harris                  Patricia Harris

Dated: 2-5-10

By: _____    By: _____
    Edwin Heeney                 Mary Heeney

Dated: _____

By: _____    By: _____
    Ward Hollowell                Gloria Hollowell

Dated: 2-9-10

By: X _____   By: X _____
Gracian Hulsey                      Mary Hulsey

Dated: 2/12/10

By: _Dismissed_____
Lila James

Dated: 3|6|07

By: _____   By: _____
Larry Kratzer                       Kris Kratzer

Dated: 2-4-2010

By: _____   By: _____
James Marion                        Mary Ann Marion

Dated: 2-4-2010

By: _____
Marylou Morris

Dated: 2.4.2010

7

By: _Peter Morris_
Peter Morris

Dated: 2-4-2010

By: _Deceased_
Larry Raymos

By: _Barbara J. Raymos_
Barbara Raymos

Dated: 2-9-10

By: _David Sheets_
David Sheets

By: _Bettye W. Sheets_
Bettye Sheets

Dated: 02/04/10

By: _James Sumner_
James Sumner

By: _Joyce Sumner_
Joyce Sumner

Dated: 02-04-10

By: _____
Phyllis Weber

Dated: 2-4-10

8

By the Defendants:

By: _____

    Grant Park Homes, by its _____, _____

Dated: _____

By: _____

    Grant Park Development, Inc., by its __ _____

Dated: _____

By: _____

    Country Fair Estates, by its _____, __ _____

Dated: _____

By: _____

    Melvin Smith

Dated: _____

By: _____

    Jerry Burger

Dated: _____

By: _____

    Joel Burger

Dated: _____

By EMC:
By: _____  _____
   Employers Mutual Casualty Company, by its ___ .   .  ___._____  _____

Dated: _____,_____

| | |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF YOLO<br>725 COURT STREET<br>WOODLAND, CA. 95695<br>530-406-6704 | **NOTICE OF CASE MANAGEMENT CONFERENCE and RELATED ORDERS**<br>(Unlimited Case) |
| DONALD ANDERSON<br>Plaintiff(s):<br><br>vs.<br><br>CENTURY SURETY COMPANY, AN OHIO CORPORATION<br>Defendant(s): | Case #: CV-CV-12-0000432 |

**Case Management Conference is set for:** ___7/5/12___ @ 1:30p.m. in Department 10
**LOCATED AT 275 1st STREET, WOODLAND, CA.**

This is Notice of your **Case Management Conference (CMC)**. The date, time and department are written above. **This notice contains new policies effective in 2007.** Case Management authority is delegated to \*\*Referee J. Kent O'Mara.

1. In accordance with applicable statutes, California Rules of Court and Local Rules 12, 13 and Appendices 3 and 4, you are hereby ordered to:
   (a) Serve all named defendants and file proofs of service on those defendants with the court within 60 calendar days of filing the complaint (CRC 3.110)
   (b) Serve a copy of this notice, the Case Management Statement and the ADR information sheet on all named parties in this action.(CRC 3.220-3.222)
   (c) Comply with CRC 3.110 relating to responsive pleadings, cross complaints and extensions of time and defaults.
   (d) File and serve a completed Case Management Statement **at least calendar 15 days** before the CMC (CRC 3.725). Failure to do so may result in monetary sanctions.
   (e) Appear at the CMC in person or by CourtCall. A failure to appear shall result in dismissal or other sanction.
   (f) Meet and confer in person or by telephone (CRC 3.724) to consider each of the issues identified in CRC 3.725 no later than 30 calendar days before the date set for the Case Management Conference.

2. When a default judgment is requested the party requesting the entry of default must obtain a judgment against the defaulting party within 60 days after entry of default, unless the court has granted an extension.

3. **You are further ordered** to appear in person or through your attorney of record at the Case Management Conference noticed above. You must be fully familiar with the case and authorized to proceed with all CMC and ADR matters, including setting a trial date.

4. **ORDER TO SHOW CAUSE.** If you fail to follow the orders above, you are hereby ordered to show cause why you should not be sanctioned. The Order to Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal. All OSC's require a written response.

5. If a judgment or dismissal is filed with the court prior to the CMC, the CMC will be vacated and counsel/parties need not appear.

6. **Early ADR.** Parties may proceed to an alternative dispute resolution (ADR) process by filing a Stipulation to Continue Case Management Conference to use ADR. (See, ADR Information Sheet and accompanying packet.) In such event, and if the Stipulation is on file 15 days prior to the scheduled CMC, the CMC will be continued for 100 days to allow the parties time to complete their ADR process. The court will notify the parties of their new CMC date.

7. Telephonic appearances at the CMC are permitted and are available by contacting CourtCall, LLC, an independent vendor, at least 5 business days prior to the scheduled conference.

8. The case management judge will issue orders at the conclusion of the conference that may include: (a) referring parties to judicial arbitration or to a voluntary ADR process, including early settlement conference; (b) setting an ADR completion date; (c) establishing a discovery plan; (d) scheduling dates or the exchange of information and discovery with respect to expert witnesses; (e) dismissing or severing claims or parties; (f) setting a trial date, and for such other CMC matters as may be appropriate.

9. The case management judge may be the trial judge in this case.

**This is only a summary of local rules and policies. For further information regarding Case Management and Alternative Dispute Resolution programs, the CourtCall service, all current Local Rules, court policies set forth in the Appendices, and court forms, go to the court website at www.yolo.courts.ca.gov.**

James B. Perry, Court Executive Officer

Dated: 03/8/2012                BY: _____**V. PEREZ**_____,
                                      VPEREZ, Deputy Clerk

\*\*A challenge to a \*\*Referee on the basis of non-agreement must be made within thirty (30) days after this notice of the delegation or it will be deemed waived.

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:                    FAX NO. (Optional):

E-MAIL ADDRESS (Optional):

ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| **(Check one):** ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000) ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date:                    Time:                    Dept.:          Div.:          Room:

Address of court (if different from the address above):

☐ Notice of Intent to Appear by Telephone, by (name):

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** (answer one):
   a. ☐ This statement is submitted by party (name):
   b. ☐ This statement is submitted **jointly** by parties (names):

2. **Complaint and cross-complaint** (to be answered by plaintiffs and cross-complainants only)
   a. The complaint was filed on (date):
   b. ☐ The cross-complaint, if any, was filed on (date):

3. **Service** (to be answered by plaintiffs and cross-complainants only)
   a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served (specify names and explain why not):

      (2) ☐ have been served but have not appeared and have not been dismissed (specify names):

      (3) ☐ have had a default entered against them (specify names):

   c. ☐ The following additional parties may be added (specify names, nature of involvement in case, and date by which they may be served):

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint          (Describe, including causes of action):

| Form Adopted for Mandatory Use Judicial Council of California CM-110 [Rev. July 1, 2011] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court, rules 3.720–3.730 www.courts.ca.gov |
|---|---|---|

*LexisNexis® Automated California Judicial Council Forms*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
| DEFENDANT/RESPONDENT: | |

4. b.  Provide a brief statement of the case, including any damages. (*If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.*)

☐  (*If more space is needed, check this box and attach a page designated as Attachment 4b.*)

5.  **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial.  (*If more than one party, provide the name of each party requesting a jury trial*):

6.  **Trial date**
a. ☐ The trial has been set for (*date*):
b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint (*if not, explain*):

c.  Dates on which parties or attorneys will not be available for trial (*specify dates and explain reasons for unavailability*):

7.  **Estimated length of trial**
The party or parties estimate that the trial will take (*check one*):
a. ☐ days (*specify number*):
b. ☐ hours (short causes) (*specify*):

8.  **Trial representation** (*to be answered for each party*)
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a.  Attorney:
b.  Firm:
c.  Address:
d.  Telephone number:      f.  Fax number:
e.  E-mail address:      g.  Party represented:
☐  Additional representation is described in Attachment 8.

9.  **Preference**
☐  This case is entitled to preference (*specify code section*):

10.  **Alternative dispute resolution (ADR)**
a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.

(1) For parties represented by counsel: Counsel ☐ has ☐ has not  provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2) For self-represented parties: Party ☐ has ☐ has not  reviewed the ADR information package identified in rule 3.221.

b.  **Referral to judicial arbitration or civil action mediation** (*if available*).

(1) ☐  This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐  Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☐  This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. (*specify exemption*):

CM-110 [Rev. July 1, 2011]      **CASE MANAGEMENT STATEMENT**      Page 2 of 5

*LexisNexis® Automated California Judicial Council Forms*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER |
| DEFENDANT/RESPONDENT: | |

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing to** participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed to** participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☐ Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

*LexisNexis® Automated California Judicial Council Forms*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**11. Insurance**

   a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

   b. Reservation of rights: ☐ Yes ☐ No

   c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

   ☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

   a. ☐ There are companion, underlying, or related cases.

      (1) Name of case:

      (2) Name of court:

      (3) Case number:

      (4) Status:

      ☐ Additional cases are described in Attachment 13a.

   b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

   ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

   ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**

   a. ☐ The party or parties have completed all discovery.

   b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

   c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

*LexisNexis® Automated California Judicial Council Forms*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**20. Total number of pages attached** *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

**CASE MANAGEMENT STATEMENT**

*LexisNexis® Automated California Judicial Council Forms*

## ALTERNATIVE DISPUTE RESOLUTION (ADR)

### Information Sheet

***The court requires that all counsel provide a copy of this Information Sheet to their clients. On our website (www.yolo.courts.ca.gov) you can learn more about ADR and the litigation process by going to the ADR link in the banner on the website's home page. There you will find additional links to important information and forms related to alternative dispute resolution (ADR) and case management that can be copied or downloaded for your use.***

Recognizing that many civil disputes can be resolved without the time and expense of traditional civil litigation, the Yolo County Superior Court strongly encourages parties in civil cases to explore and pursue the use of ADR.

### What is Alternative Dispute Resolution?

Alternative Dispute Resolution (ADR) is the general term applied to a wide variety of dispute resolution processes which are alternatives to lawsuits. Types of ADR processes include arbitration, mediation, neutral evaluation, mini-trials, settlement conferences, private judging, negotiation, and hybrids of these processes. All ADR processes offer a partial or complete alternative to traditional court litigation for resolving disputes. At the present time, the Yolo County Superior Court offers mediation and arbitration. In the future, the court plans to initiate an early settlement conference program.

### What are the advantages of using ADR?

ADR, particularly mediation, can have a number of advantages over traditional court litigation.

- **ADR can save time.** Even in a complex case, a dispute can be resolved through ADR in a matter of months or weeks, while a lawsuit can take years.
- **ADR can save money.** By producing earlier settlements, ADR can save parties and courts money that might otherwise be spent on litigation costs (attorneys fees and court expenses.)
- **ADR provides more participation.** Parties have more opportunity with ADR to express their own interests and concerns, while litigation focuses exclusively on the parties' legal rights and responsibilities.
- **ADR provides more control and flexibility.** Parties can choose the ADR process most appropriate for their particular situation and that will best serve their particular needs.
- **ADR can reduce stress and provide greater satisfaction.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere found in litigation. Surveys of disputants who have gone through ADR have found

that satisfaction with ADR is generally high, especially among those with
extensive ADR experience.

## Arbitration and Mediation

The Yolo County Superior Court currently offers pre-screened panelists with experience
and training in each of the following areas.

1. **Arbitration.** An arbitrator hears evidence presented by the parties, makes legal
   rulings, determines facts and makes an arbitration award. Arbitration awards
   may be entered as judgments in accordance with the agreement of the parties
   or, where there is no agreement, in accordance with California statutes.
   Arbitrations can be binding or non-binding, as agreed by the parties in writing.
2. **Mediation.** Mediation is a voluntary, informal, confidential process in which the
   mediator, a neutral third party, facilitates settlement negotiations. The mediator
   improves communication by and among the parties, helps parties clarify facts,
   identify legal issues, explore options and arrive at a mutually acceptable
   resolution of the dispute.
3. **Judicial Arbitration.** Some cases will be ordered to Judicial Arbitration if they
   come within the provisions of Code of Civil Procedure section 1141.11 and
   California Rules of Court, 3.811 and 3.812. Local Rule 13 and Appendix 4
   govern this ADR procedure.

Litigants are encouraged to use an ADR process as early in the case as circumstances
permit. All appropriate cases will be reviewed for referral to ADR at the Case
Management Conference.

## ADR Procedures for the Yolo County Superior Court

1. Upon filing a Complaint, the Plaintiff will receive this information sheet from the
   Superior Court Clerk. **Plaintiff is required to include the ADR Information
   Sheet when he or she serves the Complaint on the Defendant.**
2. All parties to the dispute may voluntarily agree to take the matter to an ADR
   process. Stipulation Forms for this procedure are provided on-line at the court's
   website. (At the website, click on the "ADR" link and then on "Forms".) Parties
   choose and contact their own ADR provider. A list of providers is available on-
   line at the Panelist link.
3. An initial Case Management Conference ("CMC") will normally be scheduled
   within 120 days of the filing of the Complaint. An original and copy of the Case
   Management Conference Statement (see Forms link) must be completed and
   provided to the court clerk no later than 15 days prior to the scheduled
   conference. The CMC is governed by Local Rule 12 and the policies in Appendix
   3, with which all parties are expected to comply.

4. The Yolo County Superior Court Case Management Judge will strongly encourage all parties and their counsel to consider and utilize an ADR process that is appropriate to the case.

5. If the parties agree to use ADR *before* the CMC and they file the form <u>Order to Continue Case Management Conference and Stipulation to Attend ADR</u> (see the Forms link) the scheduled CMC will be vacated to allow for the ADR process to conclude within 90 days. In these cases (other than judicial arbitration), the CMC will be continued for case management/status review 100 days after the original CMC date. If the case is resolved through ADR, the status review date may be vacated if the court receives a Notice of Settlement, dismissal or judgment.

6. If the parties voluntarily agree to ADR at the CMC, the parties will be required to download, sign and file the Form <u>Stipulation and Order to ADR</u>.

7. At the CMC the court will review all scheduled cases for their suitability for referral to ADR. Please review the CMC links to know the subjects and procedures at the CMC. Attendance in person or by CourtCall at the CMC is mandatory.

8. **The fees for ADR are the responsibility of the parties**.

9. Local Court Rules require your cooperation in evaluating the ADR program and the court will expect the Client and Attorney Evaluation Forms to be completed and submitted **within 10 days of concluding the process.**

### Information:

For a description of the ADR programs, CMC policies and for CMC and ADR forms go to the links on the court's web site: **www.yolo.courts.ca.gov**

You may also use the **Contact Us** link on the web site.

## CASE MANAGEMENT CONFERENCE POLICIES

***Introductory note.*** *Case management procedures and the case management conference (CMC) are used by the court to expedite the movement of most civil cases through to an early resolution or trial. Counsel are expected to be thoroughly familiar with Local Rules 12 and 13 and the court's policies set out in Appendices 3 and 4 to the rules.*

### CMC Policies.

A case management conference (CMC) will be set by the clerk at the time the complaint is filed, ordinarily 120 days after the filing. All cases, limited and unlimited, are required to participate in a CMC. ***Limited collection cases*** *(a new designation) have a specially designed management program described in the Notice of Case Management Conference provided by the Clerk at the time the case is filed.* (Uninsured motorist cases are governed by Local Rule 12.3 and are not discusses here.)

The Case Management Statement must be **filed 15 days prior** to the scheduled CMC and should fully address all of the issues set forth in the <u>Judicial Council form CM 110</u>. Timely and complete Statements will facilitate the CMC and benefits the parties, counsel and the court. <u>A failure to file a CMC Statement, or late filing, inconveniences the court and will subject the party to the Order to Show Cause included in the Notice of Case Management Conference and will be heard at the same time.</u>

In appropriate cases and for the convenience of the court and the parties, the court may issue a CMC Order Without Appearance. (CRC 3.722(d).)

Attendance at the CMC is required, personally or telephonically. See, <u>Using CourtCall</u> (on the court's website) to appear by phone. A trial date may be set at the first CMC. Trial counsel and back up trial counsel must be specified at the CMC. (If such counsel is not identified, relief from the scheduled trial date may not be based on the ground that counsel is engaged elsewhere.)

Every case management statement will be reviewed by the CMC judge prior to the initial CMC for referral to an appropriate form of ADR. The parties are encouraged to elect a form of alternative dispute resolution (ADR) prior to the CMC. <u>(Please see the programs described in the Alternative Dispute Resolution</u> link on the court's website for more information.)

The CMC judge will deem the case at-issue at the time of the CMC absent a showing of contrary circumstances.

At the CMC, you may expect the CMC judge to make appropriate pre-trial orders on any of the following matters (CRC 3.715.):

- An order identifying the case as one which may be amenable to early settlement or other alternative disposition technique;

- An order referring the case to arbitration, mediation or other dispute resolution process, or a referral to the ADR Administrator for mandatory dispute resolution education.

- An order assigning a trial date. (Counsel are required to be prepared to select a trial date at the CMC.)

- An order transferring the case to the limited jurisdiction of the Superior Court;

- An order identifying the case as one which may be protracted and determining what special administrative and judicial attention may be appropriate, including special assignment, appointment of referee or special master, and the like;

- An order of discovery; including but not limited to establishing a discovery plan or schedule, assignment to a discovery referee, and/or establishing a discovery cut-off date;

- An order scheduling the exchange of expert witness information;

- An order scheduling a subsequent CMC; and

- Such other orders to achieve the interests of justice and the timely disposition of the case.

Orders to ADR are intended to implement the ADR process which began with the filing of the complaint. When cases are filed, counsel are advised of the ADR processes in educational/procedural materials delivered by the court clerk. These must also be served on the defendant. The goal is to move as many cases to judicial arbitration or voluntary ADR as possible prior to or at the CMC and to have the cases resolved within the requirements of the Trial Delay Reduction Act, Government Code section 68607 and CRC 3.714(b). (See, Alternative Dispute Resolution on the court's website.)

**POLICIES IN APPENDICES 3 AND 4 TO THE CURRENT RULES 12 and 13 MAY BE REVISED FROM TIME TO TIME. PLEASE CHECK THE COURT'S WEBSITE FREQUENTLY FOR ADVISORIES OF PROCEDURAL CHANGES AFFECTING THE CMC AND ADR PRACTICES.**
**(www.yolo.courts.ca.gov)**