UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD ANDERSON, et al., | No. 2:12-cv-01057-MCE-DAD |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| CENTURY SURETY COMPANY, an Ohio Corporation, and NATIONWIDE MUTUAL INSURANCE COMPANY, an Iowa Corporation, | |
| Defendants. | |

Through this action, Plaintiff Donald Anderson and forty-four additional named Plaintiffs ("Plaintiffs") seek a joint and several judgment against Defendants Century Surety Company ("Century") and Nationwide Mutual Insurance Company ("Nationwide") (collectively, "Defendants") pursuant to California Insurance Code § 11580(b)(2). Presently before the Court is Century's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56,[1] filed on November 16, 2012. (ECF No. 19.) On November 19, 2012, Century filed an Amended Motion for Summary Judgment which amended only the date of the motion hearing. (ECF No. 21.) Plaintiffs filed a timely opposition to the motion. (ECF No. 28.)

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise stated.

1

For the reasons set forth below, Century's motion for summary judgment is denied.[2]

## FACTUAL BACKGROUND

A.  **Plaintiffs' Version of the Facts**[3]

Plaintiffs own mobile homes in a mobile home park known as Country Fair Estates ("the Park"). Grant Park Development, Inc., owns and operates the Park. On November 28, 2006, Plaintiffs initiated a lawsuit against Grant Park Development, Inc., and others, contending that those defendants, including Grant Park Development, Inc., had failed to properly maintain the Park, causing severe flooding in the common areas and in Plaintiffs' individual spaces. The lawsuit, Anderson v. Grant Park Homes, was brought in the Superior Court of California, County of Yolo. (Pls.' Response to Def.'s Statement of Undisputed Facts, ECF No. 28-1 at 2.)

From April 10, 2007, to April 10, 2009, Century insured Grant Park Development, Inc. During that period of time, Plaintiffs first suffered damages arising out of occurrences covered under the Century policies. This damage included flooding of the Park in the fall and winter of 2007-08, caused by failure to maintain one of the road drains responsible for water runoff for the park, as well as the failure to maintain the storm drainage system. (Pls.' Statement of Undisputed Facts, ECF No. 28-2 (citing to Sumner Decl., ECF No. 28-5; Lohse Decl., ECF No. 28-6).) Flooding which damaged the common areas, as well as new damage to Plaintiffs' mobile home units, also occurred during this time. (Lohse Decl., ECF No. 28-6.) The damage included cracks in walls and ceilings, cracks in the crawl space underneath homes, separation between wall and center beams and problems with doors. (Marquez Decl., ECF No. 28-10.)

---

[2] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. Local R. 230(g).

[3] The following recitation of facts is taken, sometimes verbatim, from Plaintiffs' Opposition to Century Surety's Motion for Summary Judgment.  (ECF No. 28 at 6-7.)


1 The damage that occurred in the 2007-08 winter was new and different damage from the
2 previous damage. (Lohse Decl., ECF No. 28-6 at 2.)
3     In July 2009, the Anderson Plaintiffs filed a Second Amended Complaint setting
4 forth the above-stated facts. Plaintiffs contend that although the same language was
5 used to describe these new occurrences and the damage, the use of the same language
6 in the Second Amended Complaint "did not in any way eliminate the duty a subsequent
7 insurer would have to investigate the occurrences, the cause of those occurrences, and
8 the damage caused by those occurrences to determine whether or not coverage
9 existed." (ECF No. 28 at 7.)
10     On June 29, 2009, counsel for Grant Park Development, Inc., sent a letter to
11 Century, tendering the defense and indemnity of the claims set forth in Plaintiffs' Second
12 Amended Complaint. On September 22 and 28, 2009, Century denied coverage to
13 Grant Park Development, Inc., on the basis that the work performed by Grant Park
14 Development, Inc.—for which Grant Park Development, Inc., could potentially be held
15 liable—was completed before the inception of the Century policies. On March 11, 2010,
16 without investigating the claims, Century supplemented its denial and asserted that all of
17 the property damage claimed by Plaintiffs was deemed to have taken place before the
18 Century policies began. Century separately asserted that each of the new claims was
19 based on intentional conduct.
20     Plaintiffs entered a settlement agreement with Grant Park Development, Inc., in
21 September 2011. The settlement agreement formed the basis of a Stipulated Judgment
22 in the amount of $3,373,843.91 against Grant Park Development, Inc. The Superior
23 Court approved and entered the Stipulated Judgment on September 30, 2011.
24 ///
25 ///
26 ///
27 ///
28 ///

## B.  Century's Version of the Facts[4]

Grant Park Development, Inc., owns and operates the Park.  On September 7, 2006, Grant Park Development, Inc., sent a letter to "Residents of Country Estates" stating that Grant Park Development, Inc. had become aware that homeowner and park improvements at the Park were being damaged.  The letter stated that homeowners had caused the damage with "improper preparations and drainage around homes, sidewalks, slabs and driveways."  According to the letter, moisture had penetrated the soil around and under improvements, causing the soil to expand, "thus lifting and cracking the concrete, damaging foundations, slabs, walks[,] and drives[,] etc."

On November 28, 2006, Plaintiffs commenced the action <u>Anderson v. Grant Park Homes</u> in the Superior Court of California, County of Yolo.  The <u>Anderson</u> Plaintiffs complained of severe flooding allegedly caused by improper maintenance at the Park.  On April 5, 2007, the <u>Anderson</u> Plaintiffs filed a First Amended Complaint, in which the only change was the addition of six homeowners as plaintiffs.  On October 5, 2007, counsel for the <u>Anderson</u> Plaintiffs filed a new action on behalf of eight additional homeowners.  This complaint was identical to the original <u>Anderson</u> complaint, and was consolidated with <u>Anderson</u>.  In July 2009, the <u>Anderson</u> Plaintiffs filed a Second Amended Complaint.  The Second Amended Complaint added the claim that the defendants had violated the Mobilehome Residency Law, codified at California Civil Code sections 798 to 799.11.

Meanwhile, Grant Park Development, Inc., applied for liability insurance from Century.  Century issued policy number CCP473633 for the period from April 10, 2007, to April 10, 2008.  This policy was followed by a second Century policy, number CCP538521, which covered the period from April 10, 2008, to March 3, 2009.[5]

---

[4] The following recitation of facts is taken, sometimes verbatim, from Century's "Summary of Facts" contained in the Motion for Summary Judgment.  (ECF No. 19 at 5-10.)

[5] Century policy numbers CCP473633 and CCP538521 will be referred to as "the Century Policies" throughout this Order.

4

Grant Park Development, Inc., tendered Anderson to Employers Mutual Casualty Company ("Employers Mutual"), which had insured Grant Park Development, Inc., for the period between April 10, 2006, and April 10, 2007, and during which period Anderson was commenced. Employers Mutual accepted the tender and provided Grant Park Development, Inc., with a defense. Grant Park Development, Inc., also tendered its defense to, and was defended by, Union America Insurance Company and Zurich.

On June 29, 2009, Employers Mutual sent Century a letter demanding that Century join the defense of the Anderson litigation. Century first responded to the demand on September 22, 2009, and again on September 28, 2009. In those responses, Century explained that the language of its insuring agreement precluded coverage for claims made in suits that were already in litigation before policy inception. Later, in a letter dated March 11, 2010, Century explained that the newly asserted Mobilehome Residency Act claims were not covered by the Century Policies because that claim did not seek damages on account of bodily injury or property damage, and because none of the acts alleged against Grant Park Development, Inc., were "accidents" as required by the Century Policies.

In February 2010, the Anderson Plaintiffs, many of the Anderson Defendants, and Employers Mutual entered into a settlement agreement. Under that agreement, Employers Mutual paid the Anderson Plaintiffs $300,000 in consideration for a "covenant not to execute," pursuant to which the Anderson Plaintiffs promised to "refrain from enforcing any claim for relief" in Anderson against either the Anderson Defendants or Employers Mutual. Shortly thereafter, the court-appointed Special Master advised the court that, as of March 8, 2012, Employers Mutual had "settled and secured a covenant not to execute to protect the named Defendants. Thus, the Special Master advised that "only the insurance coverage is now implicated."

Then, in September 2011, Grant Park Development, Inc., entered into another settlement agreement with the Anderson Plaintiffs.

///

Under the terms of the September 2011 agreement, the <u>Anderson</u> Plaintiffs agreed to dismiss their complaint against all of the <u>Anderson</u> Defendants except Grant Park Development, Inc., and Grant Park Development, Inc., agreed that a stipulated judgment in the amount of $3,373,843.91 could be entered against Grant Park Development, Inc., alone.  The September 2011 agreement acknowledged that Plaintiffs had granted Grant Park Development, Inc., a "covenant not to execute" in 2010.  The <u>Anderson</u> court entered the stipulated judgment, and did so without conducting a trial or any other form of evidentiary hearing.

### C.     The Century Policies

The Century Policies contain several provisions key to the outcome of Century's motion.  The insuring agreement of the Century Policies reads, in relevant part:

> [Century] will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies.  [Century] will have the right and duty to defend the insured against any "suit" seeking those damages.  However, [Century] will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply . . . .

(ECF No. 1-2 at 92.)

The Century Policies provide that the insurance applies to "property damage"

> Only if: (1) The . . . "property damage" is caused by an "occurrence" . . . ; (2) The . . . "property damage" occurs during the policy period; and (3) prior to the policy period, no insured . . . and no "employee" authorized by [the insured] to give or receive notice of an "occurrence" or claim, knew that the . . . "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the . . . "property damage" occurred, then any continuation, change, or resumption of such . . . "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

(ECF No. 1-2 at 88.)

///

According to the Century Policies, "property damage will be deemed to have been known to have occurred at the earliest time when any insured . . . receives a written or verbal demand or claim for damages because of . . . 'property damage' . . . ." (ECF No. 1-2 at 88.)  The Century Policies define an "occurrence" as:

> An accident, including continuous or repeated exposure to substantially the same general harmful conditions.  All "bodily injury" or "property damage" arising out of an "occurrence" or series of related "occurrences" is deemed to take place at the time of the first such damage or injury even though the nature and extent of such damage may change; and even though the damage may be continuous, progressive, cumulative, changing, or evolving; and even though the "occurrence" causing such "bodily injury" or "property damage" may be continuous or repeated exposure to substantially the same general harmful conditions.

(ECF No. 1-2 at 80.)  Finally, the Century Policies contain a condition titled "Legal Action Against Us," which provides:

> No person or organization has a right under this Coverage Part . . . to sue us on this Coverage Part unless all of its terms have been fully complied with.  A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance.  An agreed settlement means a settlement and release of liability signed by us, the insured, and the claimant or the claimant's legal representative.

(ECF No. 1-2 at 97-98.)

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying . . . the part of each claim or defense . . . on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Twp. of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).

Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

Century asserts that it is entitled to summary judgment for two reasons. First, Century argues that Plaintiffs do not have standing. Second, Century contends that Plaintiffs' damages are not covered by the relevant Century insurance policies. Additionally, both Century and Plaintiffs request that the Court take judicial notice of certain documents. Each issue is discussed below.

///
///
///
///

A.    **Procedural Issues**

"Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Pursuant to Federal Rule of Evidence 201, courts may take judicial notice of "undisputed matters of public record." Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001). While federal courts may notice judicial records, the content of such records and deposition testimony are not established facts that can be judicially noticed. See In re Oracle Corp. Sec. Litig., 627 F.3d 376, 386 n.1 (9th Cir. 2010); Newman v. San Joaquin Delta Comm. Coll. Dist., 272 F.R.D. 505, 516 (E.D. Cal. 2011). Under Federal Rule of Evidence 201, the Court has discretion to take judicial notice of a court record in another court, such as those that are directly relevant to the matter at issue. United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) ("We may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue); see also Carolina Cas. Ins. Co. v. Jones Helsley, PC, No. 1:10-cv-00916-LEW, 2012 WL 893153, at *2 (E.D. Cal. Mar. 14, 2012).

Century requests that the Court take judicial notice of certain records from the underlying action in this case, Anderson v. Grant Park Homes, case number CV06-2070 in the Superior Court of California, County of Yolo. (ECF No. 19-3.) Specifically, Century asks that the Court take judicial notice of the Second Amended Complaint from the underlying action (ECF No. 19-3 at 4), Discovery Order 4 (ECF No. 19-3 at 22), and a printout of the online docket from the underlying case (ECF No. 19-3 at 26-54). Pursuant to Federal Rule of Evidence 201 and Ninth Circuit authority, the Court hereby grants Century's request for judicial notice.

///

1    Plaintiffs also request that the Court take judicial notice of certain documents,
2 specifically responses to interrogatories by Plaintiffs Patricia Harris, David and Bettye
3 Sheets and Sandra Franco, which were produced in the underlying action. For the same
4 reasons as set forth above, the Court grants Plaintiffs' request for Judicial notice.
5 However, the content of [these] records . . . are not established facts that can be
6 judicially noticed. See In re Oracle Corp. Sec. Litig., 627 F.3d at 386 n.1.

   B.   **Substantive Issues**

   A liability insurer has a duty to defend its insured against third party claims that are potentially within the scope of the insured's policy, and also has a duty to defend any non-covered claims that are asserted in the same action. Buss v. Sup. Ct., 16 Cal. 4th 35, 46-48 (1997). In addition, the insurer owes the insured a duty to indemnify claims that are covered by the policy. Id. at 45-46. An insurer is required to act in good faith in dealing with its insured. Hamilton, 27 Cal. 4th at 724.

   Where the insurer declines the defense, the insured "is free to make the best settlement possible with the third party claimant, including a stipulated judgment with a covenant not to execute. Provided that such settlement is not unreasonable and is free from fraud or collusion, the insurer will be bound thereby." Safeco Ins. Co. of Am. v. Parks, 170 Cal. App. 4th 992, 1013 (2009) (quoting Pruyn v. Agricultural Ins. Co., 36 Cal. App. 4th 500, 515 (1995)); see also Sanchez v. Truck Ins. Exch., 21 Cal. App. 4th 1778 (1994) (quoting Zander v. Texaco, Inc., 259 Cal. App. 2d 793, 802-03 (1968)); Gray v. Begley, 182 Cal. App. 4th 1509, 1522 (2010) ("When an insurer refuses to defend, it may be bound by a . . . reasonable, non-collusive settlement reached by its insured with the claimant.").

///
///
///

Under California law, all liability policies issued in California contain "a provision that whenever judgment is secured against the insured . . . in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment." Cal. Ins. Code § 11580(b)(2). Section 11580 "provides an insured plaintiff with the right to bring a direct action against a defendant's insurer which does not defend its insured once the plaintiff obtains a judgment against the defendant." Travelers Casualty & Surety Co. v. Sup. Ct., 126 Cal. App. 4th 1131, 1141 (2005). In accordance with this requirement, the Century Policies provide that "a person or organization may sue [Century] to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but [Century] will not be liable for damages that are not payable under the terms of this Coverage part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by [Century], the insured and the claimant or the claimant's legal representative." (ECF No. 1-2 at 49.)

In the present case, Century contends that this "no action" clause does not apply to Plaintiffs' claim. Century first asserts that because the settlement agreement was not signed by Century, it is therefore not an "agreed settlement" within the terms of the Century Policy. Thus, according to Century, the sole issue is whether the stipulated judgment is a "final judgment" within the meaning of the "no action" clause. Century argues that because the stipulated judgment was not obtained after an "actual trial," it is not a final judgment within the meaning of section 11580 and thus the no action clause bars Plaintiffs' suit. More specifically, Century contends that under California law, a "judgment" within the meaning of section 11580 requires an "independent adjudication of facts based on an evidentiary showing," and a "process that does not create the potential for abuse, fraud, or collusion." See Nat'l Union Fire Ins. Co. v. Lynette, 27 Cal. App. 4th 1434, 1449 (1994).

///

12

While Century is correct that a judgment under section 11580 contains those two requirements, California courts have consistently held that "[a]n insurer that has breached its duty to defend under a policy may be bound by a stipulated judgment agreed to by its insured without its consent, notwithstanding a 'no action' clause in the policy." Risely v. Interinsurance Exch. of Auto. Club, 183 Cal. App. 4th 196, 210 (2010). "The insurer is deemed to have waived its rights under the 'no action' clause by such conduct constituting a breach of its obligations under the policy." Diamond Heights Homeowners Ass'n v. Nat'l Am. Ins. Co., 227 Cal. App. 3d 563, 581 (1991). In short, an insurer who wrongfully refuses to defend its insured has repudiated or breached its duties under the policy, and, as a breaching party, cannot enforce the policy terms.

In accordance with this principle, Plaintiffs contend that Century cannot rely on the "no action" clause to preclude Plaintiffs' present action, brought pursuant to section 11580, because Century wrongfully refused to defend the underlying suit. Thus, two issues emerge that are central to resolution of Century's motion for summary judgment. The first issue is whether Century wrongfully refused to defend the underlying action. The second issue is whether Century can be bound by the Stipulated Judgment should it be found that Century wrongfully refused to defend the underlying action.

### 1. Whether Century Wrongfully Refused to Defend the Underlying Action

Century contends that its policies did not cover Plaintiffs' claims, and thus Century was not obligated to defend the underlying action. Century points first to the "occurrence" requirement contained in the insuring agreement of the Century policies. The policies provide that for a claim of damages to be covered, the claim must arise from an "occurrence" that caused the property damage "during the policy period." (ECF No. 1-2 at 88.) The agreement defines "occurrence" as follows:

///

13

> All "property damage" arising out of an "occurrence" or series of related "occurrences" is deemed to take place at the time of the first such damage or injury even though the nature and extent of such damage or injury may change; and even though the damage may be continuous, progressive, cumulative, changing, or evolving; and even though the "occurrence" causing such . . . "property damage" may be continuous or repeated exposure to substantially the same general harmful conditions.

Century contends that the property damage that took place during the covered period was part of an "occurrence" or "series of related 'occurrences'" because Plaintiffs suffered property damage over a period of several years, beginning in September 2006. Thus, Century maintains that the first instance of property damage took place before the Century insurance policy took effect, and thus all "occurrences" of property damage occurring within the covered period are deemed to take place at the time of the first such damage. In this case, Century contends that because Plaintiffs' damage began in September 2006, Plaintiffs' "occurrence" began in September 2006. Thus, Century maintains that, under the terms of the policy, the "property damage" is deemed to take place in September 2006, and no "property damage" took place during the policy period.

Plaintiffs, on the other hand, contend that separate "occurrences" of property damage took place during the policy period, arising out of the 2007-08 rainy season. Plaintiffs assert that because this damage is separate from the prior damage, the damage suffered during the policy period cannot be deemed to have taken place at the time of the 2006 rainy season damage. Thus, according to Plaintiffs, property damage occurred during the policy period, and Century was obligated to provide a defense.

Plaintiffs submit numerous affidavits and exhibits depicting damage that they contend occurred for the first time during the 2007-08 rainy season. (See ECF Nos. 28-5, 28-6, 28-7, 28-8, 28-9, 28-10.) Importantly, Plaintiffs submit the declaration of licensed architect and contractor Norbert Lohse. (ECF No. 28-6 at 2.) Mr. Lohse states that he performed "visual and intrusive investigations of the homes involved in the Anderson v. Grant Park action." (ECF No. 28-6 at 1.) Mr. Lohse states:

///

> In my professional opinion, Plaintiffs' properties were damaged prior to April 10, 2007, by occurrences which caused flood and property damage. . . . The occurrences which caused prior flooding events include: accidental and . . . improper preparation of the lots and roads causing negative slope and localized ponding of water, . . . accidental omission of drainage along masonry walls damaging the masonry walls, failure to install adequate size and number of drains during park expansion causing park wide and localized water ponding and property damage, and failure to maintain the "greenbelt" around the park.

(ECF No. 28-6 at 2.) As to the damage caused after April 10, 2007, Mr. Lohse states that it was "caused by . . . failure to maintain one of the road drains responsible for water runoff for the park," and this failure caused "new and different damage." (Id.)

The issue of whether the damage that occurred during the 2007-08 rainy season is an "occurrence" that is separate from the original property damage which Plaintiffs suffered, or is part of a "series of related occurrences" that began around September 2006, is a genuine issue of material fact which is properly reserved for the trier of fact and not to be resolved by the Court on a motion for summary judgment. The trier of fact, and not the Court, must determine whether the damage suffered by Plaintiffs during the Policy Period is an "occurrence" that began during the policy period. Plaintiffs have therefore met their burden of "tendering evidence of specific facts in the form of . . . admissible discovery material, in support of [their] contention that the dispute exists." Fed. R. Civ. P. 56(e).

Given this genuine issue of material fact, it is impossible for the Court to determine at this stage whether Century wrongfully refused to defend the suit. If the trier of fact were to determine that the damage that occurred in 2007-08 was a separate "occurrence" from that of September 2006, then Century would have been obligated to defend Plaintiffs' underlying action. Based on the evidence presented by Plaintiffs, a reasonable jury could find that Century was indeed obligated to defend the underlying action, and thus Century is not entitled to judgment as a matter of law on this issue.

///

///

### 2.    Whether Century Can Be Bound By the Stipulated Judgment

Because there is genuine issue of material fact regarding whether Century wrongfully refused to defend, the Court cannot simply conclude that the no action clause bars Plaintiffs from enforcing the Stipulated Judgment against Century and enter judgment in Century's favor.  The Court must therefore go on to examine whether the stipulated judgment could be binding on Century, if it is determined at trial that Century did, as a factual matter, wrongfully deny a defense to the defendants in the underlying action.  Century argues that the judgment cannot be enforced against it, as Plaintiffs fail to demonstrate that the stipulated judgment was entered into in good faith and is "free from fraud or collusion."

The primary issue that arises when determining whether a stipulated judgment can be enforced against the insurer is whether the judgment was entered into in good faith.  Where the insurer has "cast the insured adrift" by refusing to provide a defense, a stipulated judgment between the insured and the third-party claimant may be enforceable by the judgment creditor in a direct action against the insurer under § 11580(b)(2).  See San Diego Housing Comm'n v. Indus. Indem. Co., 95 Cal. App. 4th 669, 687 (2002).  "Where the insurer refuses to defend, to indemnify or to participate in any way in the underlying lawsuit, the insured may settle the lawsuit to his or her best advantage, so long as there is no fraud or collusion."  Sanchez, 21 Cal. App. 4th at 1787; see also San Diego Housing Comm'n, 95 Cal. App. 4th at 687.  As stated above, when the insurer has repudiated its duty to defend, it is estopped to assert the no action clause as a bar to the judgment creditor's action.  See Diamond Heights, 227 Cal. App. 3d at 581.

In an action to enforce the judgment against the insurer under § 11580(b)(2), a reasonable settlement made by the insured to terminate the underlying claim may be used as presumptive evidence of the insured's liability on the underlying claim, and the amount of such liability.  Pruyn, 36 Cal. App. 4th at 515.

This presumption arises upon proof that: (1) the insurer wrongfully failed or refused to provide coverage or a defense; (2) the insured thereafter entered into a settlement of the litigation; and (3) the settlement was "reasonable in the sense that it reflected an informed and good faith effort by the insured to resolve the claim." Pruyn, 36 Cal. App. 4th at 528. "The effect of such a presumption is to shift the burden of proof to the insurer to prove that the settlement was unreasonable or the product of fraud or collusion." Id. at 509.

In the present case, there are genuine issues of material fact as to whether Century wrongfully failed or refused to provide coverage or a defense. See supra. Thus, Plaintiffs may potentially show at trial that the first prong of the inquiry is satisfied. Next, it is undisputed that the insured thereafter entered into a settlement of the litigation by entering into the Stipulated Judgment. Thus, Plaintiffs have satisfied the second prong of this analysis. Finally, under the third prong, Plaintiffs must show that the Stipulated Judgment was "reasonable"—that is, that it was entered into in good faith.

The Court finds that there is a genuine issue of material fact as to whether the Stipulated Judgment was entered into in good faith. Century presents no evidence that the Stipulated Judgment was actually entered into in bad faith, but rather points the Court to the circumstances surrounding the entry of the Stipulated Judgment. Century contends that because the defendants in the underlying action had already obtained a covenant not to execute nineteen months prior, the defendants had no reason to go on to seek a reasonable stipulated judgment. Rather, Century contends, Plaintiffs and defendants in the underlying action had every incentive to engage in collusion, as neither party had anything to lose by entering a judgment that could only be executed against insurance companies.

The Court agrees with Century that there is cause for concern about collusion and bad faith, given those circumstances. Regrettably, Plaintiffs offer very little to address these concerns and to show that the stipulated judgment was entered into in good faith.
///

1    While Plaintiffs provide plenty of evidence showing the property damage, this evidence
2    does little to show the Court the potential value of these claims or to show the Court that
3    there was no collusion.
4        Nonetheless, there are several facts ascertainable from the record in the
5    underlying action which create a genuine issue of material fact as to whether the
6    Stipulated Judgment was entered in good faith.  First, defendants in the underlying
7    action continued to litigate for nineteen months after the sole insurance company
8    providing them with a defense settled.  Thus, defendants in the underlying action appear
9    to have retained their own counsel to defend their interests for nineteen months.  The
10   fact that the litigation continued on for over a year, at a cost to defendants, suggests that
11   defendants and plaintiffs in the underlying action continued to litigate in good faith to
12   reach a judgment that was fair and reasonable.  (See Settlement Agreement, ECF
13   No. 13 at 37-48; Covenant Not to Execute, ECF No. 1-3 at 49-70).  Second, a judgment
14   was entered against the underlying defendants and no one else, in the amount of over
15   three million dollars.  (ECF No. 1-3 at 37-48.)  While this judgment cannot be executed
16   against the underlying defendants, it can nonetheless negatively affect their credit.  See,
17   e.g., Consolidated Am. Ins. Co. v. Mike Soper Marine Servs., 951 F.2d 186, 190-91 (9th
18   Cir. 1991).  This fact also suggests that the stipulated judgment was entered into in good
19   faith and thus creates a genuine issue of material fact as to good faith.  Finally, the
20   language of the settlement agreement, approved in the stipulated judgment,
21   contemplates that a good faith hearing would be held pursuant to the California Code of
22   Civil Procedure.  (ECF No. 1-3 at 37 ("Upon approval by the court in this action of a good
23   faith motion under Code of Civil Procedure and execution by said court of the Stipulated
24   Judgment Upon Good Faith Settlement . . . .").  However, reference to the docket from
25   the underlying case reveals that such a hearing was not held (ECF No. 19-3 at 53), and
26   there is no explanation on the record before the Court why such a hearing was not held.
27   Furthermore, as Century points out, no offer-up hearing or other uncontested evidentiary
28   hearing was held.

Nonetheless, the fact that the agreement contemplates that a good faith hearing would be held suggests that the agreement was entered into in good faith, or at the very minimum creates a genuine issue of material fact as to whether the parties acted in good faith.[6]

Accordingly, the Court finds that Plaintiffs have put forward evidence sufficient to create a genuine issue of material fact regarding whether the Stipulated Judgment was entered in good faith, such that Century may be bound by it. As such, Century is not entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c).

## CONCLUSION

For the reasons set forth above, Century's Motion for Summary Judgment (ECF Nos. 19, 21) is DENIED.

IT IS SO ORDERED.

DATED: May 13, 2013

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[6] Of course, a possible alternative explanation is that a good faith hearing was not held because the parties did not act in good faith. However, these possible alternative interpretations simply demonstrate that there is a genuine issue of fact regarding whether the settlement was entered in good faith.