UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD ANDERSON, et al., | No.  2:12-cv-01057-MCE-DAD |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| NATIONWIDE MUTUAL INSURANCE COMPANY, et al., | |
| Defendants. | |

Through this action, Plaintiff Donald Anderson and forty-four additional named Plaintiffs (collectively "Plaintiffs") seek a joint and several judgment against Defendants Century Surety Company ("Century") and Nationwide Mutual Insurance Company ("Nationwide") (collectively "Defendants") pursuant to California Insurance Code § 11580 ("section 11580") and an assignment of rights to various insurance policies.  Presently before the Court is Nationwide's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, which Plaintiffs timely opposed.[1]  ECF Nos. 54, 60.  For the reasons set forth below, Nationwide's motion is GRANTED.[2]

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise stated.

[2] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local R. 230(g).

1

1

**BACKGROUND**

2

3        A.       **Factual Background**

4        Plaintiffs own mobile homes in a mobile home park known as Country Fair

5   Estates ("CFE" or "the Park").  Grant Park Development, Inc. ("GPD"), owns and

6   operates CFE.  Pls.' Resp. to Def.'s Sep. Statement of Undisputed Facts ("SSUF"), ECF

7   No. 68. at No. 110.[3]  When GPD purchased CFE, it was a partially developed, red-

8   tagged, 202-space park.  Id. at No. 166.  Between 1998 and 2005, GPD developed the

9   Park in four phases, selling all but one of the mobile homes at issue, grading all but one

10  lot, and installing all but one of the homes.  Id. at No. 117-18.

11       On November 28, 2006, Plaintiffs initiated a lawsuit against GPD and others

12  contending that those defendants had failed to properly develop the lots, install the

13  mobile homes or maintain the Park.  According to Plaintiffs, this  resulted in severe

14  flooding in the common areas and in Plaintiffs' individual spaces.  Id. at No. 172.

15  Plaintiffs' lawsuit, Anderson v. Grant Park Homes, was brought in the Superior Court of

16  California, County of Yolo, and alleged causes of action for strict liability, breach of

17  implied warranty, breach of express warranty, breach of contract, negligence, breach of

18  Health and Safety Code §§ 10835 et seq., fraud, breach of the covenant of quiet

19  enjoyment of tenancy, and unlawful, unfair, and fraudulent business practices.  Id. at

20  No. 172-73.

21       The parties to the underlying action entered various settlement, assignment, and

22  covenant not to execute agreements.  Id. at No. 222.  Pursuant to those agreements, a

23  number of insurers, including Union American Insurance Company ("Union"), Zurich

24  America Insurance Company ("Zurich"), and Employer Mutual Casualty Company

25  ("EMC"), were released from further obligations to defend or indemnify.[4]  Id. at No. 223.

26       [3] The Court cites to Plaintiffs' Responses to ensure they are included in the record.  A review of
those responses makes clear that none of the material facts that follow are disputed.

27

28       [4] GPD was insured by, other than Nationwide, Union, Zurich, Insurance Company of New York,
EMC, and co-Defendant Century.  SSUF at No. 119.

In addition, Plaintiffs entered into a Settlement Agreement, Assignment, and Agreement with GPD allowing a stipulated judgment to be entered against GPD in the amount of $3,373,843.91.  Id. at No. 224-25, hereinafter "Stipulated Judgment."  Plaintiffs agreed not to execute the Stipulated Judgment against GPD, however, and, in exchange, GPD assigned Plaintiffs its rights to proceed against additional insurers Century and Nationwide instead.  Id.

Plaintiffs thereafter initiated this action against Nationwide and Century.  Plaintiffs' Compl., ECF No. 1-2.[5]  According to the Complaint in this case, both Century and Nationwide had issued policies to GPD that Plaintiffs contend covered the losses they sustained as a result of GPD's failure to properly sell and install Plaintiffs' mobile homes.  Plaintiffs identify, among other things, the following specific failures allegedly attributable to GPD and covered by the policies:

> Drainage systems were improperly designed and/or constructed and/or built out of defective materials;

> Basic design components were omitted and/or improperly installed and/or built out of defective materials;

> The foundations and foundation systems were improperly designed and/or constructed and/or built out of defective materials;

> The homes were improperly installed, causing damage to the homes during the installation process;

> Defective concrete materials and/or workmanship caused property damage to plaintiffs' homes;

> Improper grading and/or drainage caused damage to plaintiffs' homes;

> Defective landscaping materials and/or workmanship caused damage to plaintiffs' homes; and

> Improper construction of the decks and brick work caused damage to plaintiffs' homes.

---

[5] As with their prior complaint, Plaintiffs filed this suit in Yolo County Superior Court as well. Defendants answered the state pleading and then removed the action to this Court.  Defs.' Not. of Removal, ECF No. 1-1.

1  Pls.' Compl. at ¶¶ 7, 10.[6]

2        GPD purportedly tendered claims for these damages to, among others, both

3  Century and Nationwide.  SSUF at Nos. 198, 202, 209.  According to the Complaint,

4  Century "wrongfully refused to defend the insured," but Nationwide, along with several

5  other insurance carriers (e.g., Union, Zurich, and EMC), initially agreed to contribute to

6  GPD's defense.  Id. at Nos. 209-210.  At the end of February 2010, however, Nationwide

7  withdrew its defense subject to its reservation of rights.  Id. at No. 130.  According to

8  correspondence from Nationwide to GPD, Nationwide believed it had no duty to defend

9  or indemnify because the damages claimed fell under the policies' Designated Work

10  Exclusion ("DWE").  Id. at Nos. 211-12.  Nationwide explained that the policies had only

11  been intended to cover GPD's vacant land as opposed to its real estate development

12  operations, and GPD's potential liability as a result of Plaintiffs' original suit arose out of

13  GPD's contracting and real estate operations only.  Id.  In that letter, Nationwide also

14  made clear that:

15          Nationwide's investigation of this claim, reservation of rights,
16          defense of the insured, and decision to withdraw from the
        defense, shall not be construed as a waiver of any policy
        defense or legal grounds available in support of our coverage
17          position that have not yet been addressed in writing.  Nor
        shall Nationwide be estopped in the future from asserting
18          additional policy defenses or legal grounds in defense of our
        coverage position.  Likewise, none of the insured's rights
19          under the Nationwide policy or at law have been waived.  Nor
        shall the insured be estopped in the future from asserting any
20          rights it may have under the Nationwide policy.

21  Id.

22        Given Century's "wrongful refusal" to provide a defense and Nationwide's

23  withdrawal of its defense, Plaintiffs contend that GPD was forced to enter the above-

24  mentioned Stipulated Judgment.  Both Century and Nationwide thereafter refused to pay

25  any portion of that judgment, which prompted Plaintiffs' filing of the instant complaint.

26

27       [6] According to Plaintiffs' expert, the damages identified here could not have occurred earlier than March 2002.  SSUF at No. 406.  The stipulated judgment also makes clear that the damage occurred prior to April 2002.  Id. at No. 223.

28

Pls.' Compl. at ¶¶ 21-22.  The terms of the applicable policies are thus central to Nationwide's instant motion for judgment in this enforcement action.

### B. The Policies

Nationwide began insuring GPD pursuant to consecutive general commercial liability policies in 1999.[7]  SSUF at No. 2-13.  Those policies each state that the "Business of the Named Insured" is "PROPERTY OWNER," and GPD paid between $232 and $633 in annual premiums for each policy.[8]  Id. at No. 14.

Beginning on August 9, 2001, every policy contained a Designated Premises and Projects Endorsement ("DPPE"), which limited coverage only to "'property damage' arising out of . . . [t]he ownership, maintenance or use of the premises" that was specifically scheduled in the policies and to "operations necessary or incidental to those premises[.]"  The scheduled premises, which varied over the years, were as follows:

1. 3120 Adelaide Rd., Paso Robles (described as 840 square-feet "BUILDING OR PREMISES – OFFICE");

2. APN #052-050-25 (vacant land);

3. APN #052-050-03 (vacant land);

4. APN #052-050-84-1 (vacant land);

5. APN #052-060-11 (vacant land);

6. 5130 County Rd 99W, Dunnigan (1800 square feet "BUILDINGS OR PREMISES – BANK OR OFFICE – MERCANTILE");

7. 5160 County Rd 99W, Dunnigan (1200 square feet "BUILDINGS OR PREMISES – BANK OR OFFICE – MERCANTILE");

8. APN #052-050-041 (vacant land);

9. APN #052-060-111 (vacant land);

---

[7] Prior to August 9, 1999, an affiliate of Nationwide, Allied Mutual Insurance Company ("Allied"), insured GPD.  SSUF, No. 1.  Allied is not a party to this action.

[8] Those premiums were as follows: 1999 policy ($633); 2000 policy ($232); 2001 policy ($232); 2002 policy ($265); 2003 ($464); 2004 policy ($336); 2005 ($599); 2006 policy ($366); 2007 policy ($417); 2008 policy ($350); 2009 policy; ($352); 2010 policy ($500).  SSUF, Nos. 23, 27, 31, 38, 44, 53, 63, 70, 77, 85, 92, 98.

1    10.    APN #052-050-091 (vacant land).

2  SSUF at Nos. 28-29, 32-34, 39-42, 45-48, 49-51, 54-61, 64-68, 71-75, 78-83, 86-90, 93-

3  96.  None of the Nationwide policies identify any mobile home park.  Id. at No. 100.

4    Each policy also contains the above-mentioned DWE, which precludes coverage

5  for contracting and development operations:

6    **THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**
7    **EXCLUSION – DESIGNATED WORK**

8    This endorsement modifies insurance provided under the following:
9

10   COMMERCIAL GENERAL LIABILITY COVERAGE PART
     PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

11

12   **Description of your work:**

13   CONTRACTING OPERATIONS & REAL ESTATE DEVELOPMENT

14   (If no entry appears above, information required to complete this endorsement will be shown in the
15   Declarations as applicable to this endorsement.)

16   This insurance does not apply to "bodily injury" or "property damage" included in the "products-
17   completed operations hazard" and arising out of "your work" shown in the Schedule.

18

19  Id. at No. 105.[9]  According to Nationwide, when it became aware that GPD was a

20  contractor and developer, it added the DWE because it did not intend to insure those

21  operations.  See SSUF at No. 134, 152.  Even aside from the terms of the DWE itself,

22  however, Nationwide claims it had no specific knowledge that GPD was developing and

23  operating a mobile home park.[10]  SSUF at No. 134.  GPD never requested insurance

24

25  [9] The policies also include additional exclusions Nationwide contends preclude coverage.  The
    Court does not rely on those provisions in reaching its decision, and thus no additional factual discussion
26  is included here.

27  [10] The Court is aware that Plaintiffs dispute this fact in their opposition brief.  However, Plaintiffs
    point to no evidence supporting their argument to the contrary.  Accordingly, this fact is undisputed for
28  purposes of the instant motion.

6

1   from it for the development or operation of spaces within a mobile home park.  Indeed,

2   there is no evidence that the parties intended to bind such coverage.  To the contrary,

3   the insurance agent's company representative testified that she did not know GPD

4   owned a mobile home park, that she only procured coverage for GPD's raw land, and

5   that she never procured coverage for a mobile home development.  SSUF at Nos. 134,

6   137-138, 163.

7         GPD did, however, procure liability insurance from the other above-mentioned

8   carriers that were aware of the CFE mobile home operations.  That coverage specifically

9   named "Country Fair Estates" or recognized CFE as a "dba" of GPD.  For example,

10  Century issued a policy covering the period of 4/10/07-4/10/08 with a business

11  description of "MOBILE HOME PARKS OR CONDOS."  SSUF at No. at 120.  The

12  premium for that year was $12,750.  Id.  The following year, Century again issued a

13  policy with a business description of "MOBILE HOME PARKS OR CONDOS" and

14  insuring "Country Fair Estates" in exchange for a premium of $14,309.  Id. at No. 121.

15  EMC similarly issued policies from 4/10/03-4/10/07 naming the insured as "Country Fair

16  Mobile Home Estates/Grant Park Development" and the policy class as "MOBILE HOME

17  PARKS OR COURTS" or "MOBILE HOME PARK."[11]  Id. at No. 128.  The annual

18  premiums for the EMC policies were between approximately $2,731 and $3,272.  Id. at

19  No. 125-27.

20        **C.     Nationwide's Motion for Summary Judgment**

21        Nationwide now moves for summary judgment arguing, among other things, that

22  none of its applicable policies cover the damages Plaintiffs sustained.  Plaintiffs of

23  course disagree, and argue in opposition not only that the policies apply, but also that

24  Nationwide must be held liable for breaching the duty to defend it owed GPD.  That

25  ///

26  _____

27        [11] Like the Nationwide policies, the EMC policies contain a DPPE and schedule 5130 County Rd 99W.  The EMC policies are different from the Nationwide policies, however, because, among other things, they do not limit this location to any particular building. SSUF at Nos. 122-129.

28

1   claim, as indicated above, has now been assigned to Plaintiffs.  For the following

2   reasons, Nationwide's arguments are well taken.

3

4                                    **STANDARD**

5

6       The Federal Rules of Civil Procedure provide for summary judgment when "the

7   movant shows that there is no genuine dispute as to any material fact and the movant is

8   entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett,

9   477 U.S. 317, 322 (1986).

10          A party asserting that a fact cannot be or is genuinely
             disputed must support the assertion by: (A) citing to particular
11          parts of materials in the record, including depositions,
             documents, electronically stored information, affidavits or
12          declarations, stipulations (including those made for purposes
             of the motion only), admissions, interrogatory answers, or
13          other materials; or (B) showing that the materials cited do not
             establish the absence or presence of a genuine dispute, or
14          that an adverse party cannot produce admissible evidence to
             support the fact.
15

16  Fed. R. Civ. P. 56(c)(1).  One of the principal purposes of Rule 56 is to dispose of

17  factually unsupported claims or defenses.  Celotex, 477 U.S. at 323-24.

18      Rule 56 also allows a court to grant summary judgment on part of a claim or

19  defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may

20  move for summary judgment, identifying each claim or defense—or the part of each

21  claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v.

22  Madan, 889 F. Supp. 374, 378–79 (C.D. Cal. 1995).  The standard that applies to a

23  motion for partial summary judgment is the same as that which applies to a motion for

24  summary judgment.  See Fed. R. Civ. P. 56(a); see also State of Cal., on Behalf of Cal.

25  Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir.1998)

26  (applying summary judgment standard to motion for summary adjudication).

27      In a summary judgment motion, the moving party "always bears the initial

28  responsibility of informing the district court of the basis for its motion and identifying" the

                                           8

1  portions in the record "which it believes demonstrate the absence of a genuine issue of

2  material fact." Celotex, 477 U.S. at 323.  If the moving party meets its initial

3  responsibility, the burden then shifts to the opposing party to establish that a genuine

4  issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith

5  Radio Corp., 475 U.S. 574, 586–87 (1986); First Nat'l Bank of Ariz. v. Cities Serv. Co.,

6  391 U.S. 253, 288–89 (1968).

7       In attempting to establish the existence or non-existence of a genuine factual

8  dispute, the party must support its assertion by "citing to particular parts of materials in

9  the record, including depositions, documents, electronically stored information, affidavit

10  or declarations . . . or other materials; or showing that the materials cited do not establish

11  the absence or presence of a genuine dispute, or that an adverse party cannot produce

12  admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The opposing party

13  must demonstrate that the fact in contention is material, i.e., a fact that might affect the

14  outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S.

15  242, 248, 251–52 (1986); Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers,

16  971 F.2d 347, 355 (9th Cir. 1992).  The opposing party must also demonstrate that the

17  dispute about a material fact "is 'genuine,' that is, if the evidence is such that a

18  reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at

19  248.  In other words, the judge needs to answer the preliminary question before the

20  evidence is left to the jury of "not whether there is literally no evidence, but whether there

21  is any upon which a jury could properly proceed to find a verdict for the party producing

22  it, upon whom the onus of proof is imposed." Id. at 251 (quoting Improvement Co. v.

23  Munson, 81 U.S. 442, 448 (1871)).  As the Supreme Court explained, "[w]hen the

24  moving party has carried its burden under Rule [56(a)], its opponent must do more than

25  simply show that there is some metaphysical doubt as to the material facts." Matsushita,

26  475 U.S. at 586.  Therefore, "[w]here the record taken as a whole could not lead a

27  rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

28  Id. at 587 (quoting Cities Service, 391 U.S. at 289).

1      In resolving a summary judgment motion, the evidence of the opposing party is to

2  be believed, and all reasonable inferences that may be drawn from the facts placed

3  before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at

4  255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

5  obligation to produce a factual predicate from which the inference may be drawn.

6  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd,

7  810 F.2d 898 (9th Cir.1987).

8

9                          **ANALYSIS**

10

11      By way of the instant action, Plaintiffs seek to recover under the terms of the

12  Nationwide policies the full amount of the Stipulated Judgment entered against the

13  insured.  Nationwide argues that it is entitled to judgment as a matter of law, however,

14  because, among other things, the relevant policies do not provide coverage for the

15  development and construction of a mobile home park.  In opposition, although Plaintiffs

16  challenge whether coverage exists, they primarily argue that Nationwide misconstrues

17  the Complaint as raising only a claim under California Insurance Code 11580 when, in

18  actuality, it sets forth additional claims arising out of Nationwide's breach of the duty to

19  defend.  The gravamen of this additional bad faith claim (or claims), Plaintiffs contend, "is

20  that Nationwide unreasonably denied the benefit of providing GPD a defense based on

21  an exclusion that had no application to plaintiffs' claims."  Pls.' Opp., ECF No. 60, at 2.

22  According to Plaintiffs, then, summary judgment must be denied because, actual

23  coverage aside, Nationwide's Motion fails if there is even the potential for coverage

24  under the policies.

25      Plaintiffs are correct that a liability insurer has a duty to defend its insured against

26  third-party claims that are potentially within the scope of the insured's policy and also

27  has a duty to defend any non-covered claims that are asserted in the same action.

28  Buss v. Sup. Ct., 16 Cal. 4th 35, 46-48 (1997).  In addition, the insurer owes the insured

1  a duty to indemnify claims that are covered by the policy.  Id. at 45-46.  An insurer's duty

2  to defend is broader than the duty to indemnify, however, and an insurer must defend a

3  suit which potentially seeks damages within the coverage of the policy.  Id. at 46-47.  An

4  insurer is also required to act in good faith in dealing with its insured.  Hamilton v.

5  Maryland Cas. Co., 27 Cal. 4th 718, 724 (2002).

6         Where the insurer declines a tender of defense, the insured "is free to make the

7  best settlement possible with the third-party claimant, including a stipulated judgment

8  with a covenant not to execute.  Provided that such settlement is not unreasonable and

9  is free from fraud or collusion, the insurer will be bound thereby."  Safeco Ins. Co. of Am.

10  v. Parks, 170 Cal. App. 4th 992, 1013 (2009) (quoting Pruyn v. Agricultural Ins. Co.,

11  36 Cal. App. 4th 500, 515 (1995)).  Accordingly, under California law, all liability policies

12  contain "a provision that whenever judgment is secured against the insured . . . in an

13  action based upon bodily injury, death, or property damage, then an action may be

14  brought against the insurer on the policy and subject to its terms and limitations, by such

15  judgment creditor to recover on the judgment."  Cal. Ins. Code § 11580(b)(2).  Section

16  11580 explicitly "provides an injured plaintiff with the right to bring a direct action against

17  a defendant's insurer which does not defend its insured once the plaintiff obtains a

18  judgment against the defendant."  Travelers Casualty & Surety Co. v. Sup. Ct.,

19  126 Cal. App. 4th 1131, 1141 (2005).

20         Based on these authorities, Plaintiffs claim summary judgment should be denied

21  because the Nationwide policies provide coverage for the losses they sustained and

22  because Nationwide is liable to them in any event for wrongfully breaching its duty to

23  defend GPD.  Plaintiffs' arguments fail because: (1) despite their suggestion to the

24  contrary, Plaintiffs have not pled any claims arising out of Nationwide's duty to defend;

25  and (2) the Nationwide policies do not provide coverage for Plaintiffs' losses.

26  Accordingly, Nationwide's Motion for Summary Judgment is GRANTED.

27  ///

28  ///

1
2

**A.      Plaintiffs have failed to plead a claim based on Defendant's duty to defend.**

3      Plaintiffs' primary argument in opposition is that "Nationwide misconstrues the

4  pleadings as involving solely an Insurance Code § 11580 claim." Pls.' Opp. at 2.

5  According to Plaintiffs, "who are the assignees of all claims from Nationwide's insured,

6  [they] have stated causes of action for breach of contract and breach of the covenant of

7  good faith and fair dealing." Id. "In other words, this lawsuit includes an insurance 'bad

8  faith' claim, in addition to a section 11580 claim." Id. Plaintiffs thus reason that "[t]here

9  exists a triable issue of material fact as to whether Nationwide acted unreasonably at the

10  time it denied defense coverage for GPD based on the application of a single exclusion

11  in the policy because that exclusion simply did not apply." Id. at 3. The point of

12  Plaintiffs' argument is that, contrary to Nationwide's assertions, it must show more than

13  an absence of coverage; instead, Nationwide must also show that there was no potential

14  for coverage under its policies. The problem with Plaintiffs' contentions, however, is that

15  their Complaint does not state a claim against Nationwide based on its duty to defend.

16      Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that

17  the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . .

18  claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544,

19  555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "[A] plaintiff's obligation

20  to provide the grounds of his entitlement to relief requires more than labels and

21  conclusions, and a formulaic recitation of the elements of a cause of action will not do."

22  Id. (internal citations and quotations omitted). A court is not required to accept as true a

23  "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678

24  (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to

25  raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing

26  5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed.

27  2004) (stating that the pleading must contain something more than "a statement of facts

28  that merely creates a suspicion [of] a legally cognizable right of action")).

1     Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

2    assertion, of entitlement to relief." Id. at 555 n.3 (internal citations and quotations

3    omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how

4    a claimant could satisfy the requirements of providing not only 'fair notice' of the nature

5    of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller,

6    supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief

7    that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims

8    across the line from conceivable to plausible, their complaint must be dismissed." Id.

9    However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that

10    actual proof of those facts is improbable, and 'that a recovery is very remote and

11    unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

12     The Complaint in this case speaks for itself. While Plaintiffs aver in the same

13    pleading at issue here that co-Defendant Century "wrongfully" refused to defend GPD,

14    they never make the same allegation as to Nationwide. Indeed, Plaintiffs specifically

15    aver as to Century that "[its] refusal to defend and indemnify was wrongful, and under

16    the terms of its policy it owed both a defense and the duty to indemnify the insured for

17    damages." Pls.' Compl. at ¶ 27. No such allegation is directed at Nationwide.[12]

18     In fact, the only allegation that might potentially be construed to allege that

19    Nationwide breached its duty to defend GPD is Plaintiffs' claim that the Nationwide DWE

20    could not "be reasonably interpreted to include the sale or installation of mobile homes."

21    Id. at ¶ 17. However, that statement, standing alone, is insufficient to put Nationwide on

22    notice that Plaintiffs are pursuing a bad faith claim against it. To the contrary, read in

23    context of the remainder of the allegations in the Complaint, that allegation, at best,

24    supports the inference that Plaintiffs disagree with Nationwide's coverage determination

25    ///

26

27    [12] It is not enough that Plaintiffs allege Nationwide withdrew its defense of GPD. That fact goes to whether Plaintiffs can proceed directly against Nationwide under section 11580. Without more, that fact

28    alone does not rise to the level of a bad faith claim.

1  and that both Nationwide and Century should be precluded from relying on "no action"

2  clauses included in the various policies to avoid being held liable for indemnification.

3      Equally as important, however, is the fact that Plaintiffs do not seek to recover any

4  tort damages, such as attorneys' fees or costs incurred in litigating the underlying action,

5  arising out of Nationwide's purportedly wrongful failure to indemnify and defend GPD.

6  See Emerald Bay Comm. Ass'n v. Golden Eagle Ins. Corp., 130 Cal. App. 4th 1078,

7  1088-89 (2005) ("The general measure of damages for a breach of the duty to defend an

8  insured, even if it is ultimately determined there is no coverage under the policy, are the

9  costs and attorney fees expended by the insured defending the underlying action.").

10 Instead, Plaintiffs pray only for "the collective sum of $3,373,843.91, with interest," and

11 costs of the instant suit.  Pls.' Compl. at ¶ 28.  Plaintiffs later confirmed in their initial

12 Rule 26 disclosures that their "Computation of Damages" is based solely on "the

13 Stipulated Judgment . . . , which sets out the damages claimed by each Plaintiff").  ECF

14 No. 9 at 4.  The lack of any attempt to recover tort damages undermines Plaintiffs'

15 current argument that they are pursuing a bad faith claim.

16     Furthermore, Plaintiffs' other statements to this Court in the course of this

17 litigation further support the conclusion that they are only seeking to enforce the

18 underlying judgment against Nationwide pursuant to section 11580 or, at best, through a

19 breach of contract claim arising out of the duty to indemnify.  For example, in their Joint

20 Status Report the parties advised the Court that "Plaintiffs filed this action to enforce a

21 judgment for money damages against the insurer for the judgment debtor pursuant to

22 Insurance Code section 11580 and California case law."  ECF No. 8 at 2.  Pursuant to

23 that filing, Plaintiffs claimed that the only discovery they needed was "regarding

24 coverage exclusions and defenses the Defendants seek to assert to avoid paying the

25 judgment."  Id. at 3.  Plaintiffs never indicated they intended to conduct discovery as to

26 Nationwide's duty to defend.[13]

27     [13] The fact that the magistrate judge determined Plaintiffs stood in the shoes of GPD with respect
to a discovery motion does not change the Court's analysis.  ECF No. 37.  Plaintiffs alleged they were the
28 assignees of all of GPD's claims and, as such, the magistrate judge determined Nationwide could not rely

Notwithstanding, even if Plaintiffs had pled a claim arising out of Nationwide's breach of the duty to defend, it would fail because the only dispute between the parties is as to the legal interpretation of the policy.

> A duty to defend arises only if there is at least a potential for coverage . . . . Buss, supra, 16 Cal.4th at pp. 47–48.  A "potential for coverage" refers to the possibility that facts alleged in the complaint or otherwise known to the insurer establish a basis for indemnity under the policy. Scottsdale Ins. Co. v. MV Transportation, 36 Cal. 4th 643, 654-55 (2005).  If there is a dispute as to the existence of such facts, a potential for coverage exists until the factual dispute is resolved so as to establish either actual coverage or the absence of coverage. Id. at pp. 655, 657; Horace Mann Inc. Co. v. Barbara B., 4 Cal. 4th 1076, 1085 (1993).  Thus, any factual dispute affecting the existence of coverage creates a potential for coverage and a duty to defend.  There is no "potential for coverage" and no duty to defend, however, if the existence of coverage depends solely on the resolution of a legal question (e.g., the interpretation or application of policy terms). Waller v. Truck Ins. Exchange, 11 Cal. 4th 1, 25-26 (1995);  McLaughlin v. National Union Fire Ins. Co., 23 Cal. App. 4th 1132, 1151 (1994).  In those circumstances, coverage either exists or does not exist.  Mirpad, LLC v. Cal. Ins. Guarantee Assn., 132 Cal. App. 4th 1058, 1068 (2005). A duty to defend arises if coverage exists under the law, and no duty to defend arises if coverage does not exist.  Ibid.  If the legal question is decided in favor of coverage, a duty to defend existed as of the time that the insurer first became aware of facts alleged in the complaint, or extrinsic facts, establishing a basis for coverage. The resolution of a legal question against coverage, on the other hand, establishes in hindsight that no duty to defend ever existed and that there was never any potential for coverage.  Scottsdale Ins. Co., 36 Cal. 4th at pp. 657-58.

State Farm Gen. Ins. Co. v. Mintarsih, 175 Cal. App. 4th 274, 284 n.6 (2d Dist. 2009). To support a duty to defend claim then, Plaintiffs must point to some dispute regarding the facts.  They do not.  To the contrary, the material facts were essentially undisputed when Nationwide withdrew its defense and the only questions were as to the interpretation of the policies as a matter of law.  Accordingly, because the Court

///

---

on GPD's attorney-client privilege to decline to provide documents to Plaintiffs.  That finding is not coterminous with a finding that Plaintiffs have adequately pled any particular causes of action in their Complaint.

1    determines below that the policies do not cover Plaintiffs' damages, there was no

2    "potential" for coverage and thus no duty to defend.

3            Regardless of the futility of an hypothetical duty to defend claim however, given

4    that Plaintiffs do not plead any tort-based causes of action and have not pursued a bad

5    faith claim or any claim arising out of Nationwide's duty to defend, the only issue before

6    the Court is whether Plaintiffs may recover from Nationwide under § 11580 or its

7    assignment of GPD's right to indemnification.[14]  For the reasons that follow, the Court

8    determines that they cannot.

9       **B.    None of the applicable Nationwide policies provide coverage for
              Plaintiffs' damages.**
10

11          In order to recover on the judgment in an action brought
            under section 11580, claimants would . . . have had to plead
12          and prove that: "1) [they] obtained a judgment for bodily
            injury, death, or property damage, 2) the judgment was
13          against a person insured under a policy that insures against
            loss or damage resulting from liability for personal injury or
14          insures against loss of or damage to property caused by a
            vehicle or draught animal, 3) the liability insurance policy was
15          issued by the defendant insurer, 4) the policy covers the relief
            awarded in the judgment, [and] 5) the policy either contains a
16          clause that authorizes the claimant to bring an action directly
            against the insurer or the policy was issued or delivered in
17          California and insures against loss or damage resulting from
            liability for personal injury or insures against loss of or
18          damage to property caused by a vehicle or draught animal."

19   Garamendi v. Golden Eagle Ins. Co., 116 Cal. App. 4th 694, 710, 10 Cal. Rptr. 3d 724,

20   738-39 (2004) (quoting Wright v. Fireman's Fund Ins. Companies, 11 Cal.App.4th 998,

21   1015 (1992)) (emphasis added).  Similarly, "[t]he insurer's duty to indemnify runs to

22   claims that are actually covered, in light of the facts proved."  Buss v. Superior Court,

23   16 Cal. 4th 35 (1997).  Accordingly, Nationwide's instant motion turns on its argument

24   that Plaintiffs' damages are not covered by the policies as a matter of law.

25          [14] The Court notes that although Plaintiffs argue the assignment of rights from GPD passed to
     them all causes of action GPD may have had against Nationwide, Plaintiffs do not contend that they are
26   pursuing a breach of contract claim based on Nationwide's duty to indemnify.  Instead, Plaintiffs argue
     repeatedly that they are pursuing a section 11580 claim and claims and arising out of Nationwide's duty to
27   defend.  Since the section 11580 allegations in the complaint are sufficient to set forth a claim that
     Nationwide breached the duty to indemnify, however, the Court nonetheless addresses the coverage issue
28   both with respect to section 11580 and breach of that duty below.

1    "When the facts are undisputed, . . . the interpretation of a contract, including

2    whether an insurance policy is ambiguous or whether an exclusion or limitation is

3    sufficiently conspicuous, plain, and clear, is a question of law." Hervey v. Mercury Cas.

4    Co., 185 Cal. App. 4th 954, 962–63 (2010).  "Insurance policies are construed under the

5    same rules that govern the interpretation of other contracts." St. Paul Mercury Ins. Co. v.

6    Frontier Pac. Ins. Co., 111 Cal. App. 4th 1234, 1243 (2003).  Policies "must be

7    interpreted to give effect to the mutual intent of the parties at the time of contracting, and

8    such intent is ascertained, if possible, from the clear and explicit language of the

9    contract." Id. (internal citations and quotation marks omitted).  "It is a basic principle of

10   insurance contract interpretation that doubts, uncertainties and ambiguities arising out of

11   policy language ordinarily should be resolved in favor of the insured in order to protect

12   his reasonable expectation of coverage." Producers Dairy Delivery Co. v. Sentry Ins.

13   Co., 41 Cal. 3d 903, 912 (1986).  "It is also well established, however, that this rule of

14   construction is applicable only when the policy language is found to be unclear." Id.  "A

15   policy provision is ambiguous when it is capable of two or more constructions, both of

16   which are reasonable.  Id. (internal citations and quotation marks omitted).  Whether

17   language within a contract is ambiguous in the first place is a question of law. Id.  "In

18   cases of uncertainty not removed by the preceding rules, the language of a contract

19   should be interpreted most strongly against the party who caused the uncertainty to

20   exist." Cal. Civ. Code § 1654.  Courts generally resolve ambiguities in the insurance

21   context in favor of coverage. AIU Ins. Co. v. Superior Court, 51 Cal. 3d 807, 822 (1990).

22      The Court applies these rules and determines the Nationwide policies are

23   unambiguous and do not cover Plaintiffs' damages because no facts support the

24   contention that the parties intended the Nationwide policies to cover the construction,

25   development, or operation of a mobile home park.  First, the relevant policies all contain

26   the DPPE limiting coverage to scheduled premises, none of which are CFE.  Second,

27   the premiums paid are not commensurate with the risks inherent in constructing and

28   operating a mobile home park.  Third, there is no evidence in the record that GPD ever

17

1   notified Nationwide it was in the process of developing and managing CFE.  Finally, the

2   inclusion of the DWE supports the conclusion that the parties never meant for the

3   Nationwide policies to cover the type of development at issue here.

4       First, the DPPE by itself precludes coverage for Plaintiffs' claims.[15]  As indicated

5   above, the DPPE limited coverage to "'property damage' arising out of . . . [t]he

6   ownership, maintenance or use of the premises" that was specifically scheduled in the

7   policies and to "operations necessary or incidental to those premises."  The Nationwide

8   policy lists GPD's business as "PROPERTY OWNER," and CFE is not scheduled in any

9   of the policies.  Because CFE is not scheduled, and there is no reference to coverage for

10  a business description having anything to do with operating a mobile home park, there is

11  no coverage.

12      In fact, nothing in the record indicates that either GPD or Nationwide thought that

13  the Nationwide policies covered a mobile home park.  To the contrary, the insurance

14  agent's corporate representative testified that it only intended to bind coverage for

15  vacant land, and there is also no evidence Nationwide ever knew GPD was operating

16  CFE.  Moreover, inclusion of the DWE itself cuts against coverage because the parties

17  specifically agreed to exclude construction and development operations.[16]

18      Given these facts, this case is the most on par with Fidelity & Deposit Co. of

19  Maryland v. Charter Oak Fire Ins. Co., 66 Cal. App. 4th 1080 (1998).  In Charter Oak,

20

21      [15]  The DPPE was not included in the Nationwide policies until August 2002.  However, it is
22  undisputed that no damage was sustained prior to March or April of 2002.  Accordingly, the only applicable
policies were those issued after August 2001, and each of those policies included the DPPE.

23      [16] The Court is aware that the parties dispute whether the DWE itself precludes coverage since
there is a question as to whether the mobile homes in this case were fixtures, personal property, or
24  separate premises belonging to Plaintiffs.  This dispute essentially turns on whether there is a "mobile
home loophole" in the policy thus allowing coverage for the construction and development of a mobile
25  home park even though the parties expressly excluded from coverage damage arising out of GPD's
"contracting operations and real estate development."  Although the record makes clear that Nationwide
26  was unaware GPD had undertaken the construction and development of a mobile home park in the first
place, the Court need not reach this question because the policies read as a whole, especially given their
27  inclusion of the DPPE, preclude coverage.  The Court relies on the DWE only as an additional indicator
that the parties intended to exclude construction and development activities, and it declines to rule on
whether that exclusion independently precludes coverage as well.

28

1   the insured sought liability coverage for a construction defect claim arising out of a

2   California townhouse development.  Id. at 1082.  The insurer, Charter Oak, had issued a

3   policy to "Western Savings & Loan Assoc DBA Marina Inn."  Id. at 1083.  The Marina Inn

4   was located in Arkansas, and the general declarations page indicated that the business

5   type was "Motel & Restaurant."  Id.  The applicable buildings listed were a "Motel" and

6   "Office, Restaurant" located in Russellville, Arkansas.  Id.  The premises and operations

7   premiums were $118 and $115 and the products/completed operations premiums were

8   $175 and $151 for the relevant policy years.  Id.  The policies also contained "Hotels and

9   Motels (Operator's Risk)" endorsements.  Id. at 1084.

10          Taken as a whole, that court concluded that "Charter Oak present[ed] convincing

11   evidence that coverage under its policies was limited to the risks involved in operation of

12   the Marina Inn" and did not extend to a California residential development.  Id. at 1086.

13   The court was persuaded by the facts that the declarations identified the insured's

14   business as a motel and restaurant and that the applicable buildings designated were a

15   motel, office, and restaurant.  Id.  In addition, the status of the insured was a "Motel," not

16   an individual, partnership, or corporation.  Id.  Finally, "[t]he insured's payment of a

17   relatively small premium suggest[ed] that Charter Oak provided coverage for the

18   relatively small risks associated with the Marina Inn, not the much larger risks associated

19   with all of WSLA's projects."  Id.; see also Herzog v. National American Ins. Co.,

20   2 Cal. 3d 192, 197 (1970).  Accordingly, the Court concluded that, "as a matter of law,

21   the policies issued . . . covered the Marina Inn alone."  Id. at 1086.

22          This case is no different.  The policies make clear that only certain sites, none of

23   which are CFE, were covered.  GPD was insured as a "property owner," not as the

24   developer or manager of a mobile home park, and the premiums paid, especially in

25   comparison to those charged by other carries that specifically insured CFE, were

26   nominal.  As in Charter Oak, the business description and DPPE limitations in the

27   Nationwide policies stand in stark contrast to other policies GPD procured from other

28   carriers, including Century, Zurich, EMC, and Union, specifically naming "Country Fair

19

1    Estates."  The 2007 Century policy states that GPD's business is "MOBILE HOME

2    PARKS OR CONDOS," and the premium that year was $12,750.  The following year,

3    Century insured "Country Fair Estates" for $14,309.  The Nationwide premiums for those

4    same years was $417 and $350.  EMC similarly issued policies to CFE from 2003

5    through 2007.  The named insured is "Country Fair Mobile Home Estates/ Grant Park

6    Development," and the Class is "MOBILE HOME PARKS OR COURTS."  The annual

7    premium for these policies was between two and three thousand dollars.  Compared to

8    those policies, the Nationwide policy is much more like the policy that the Charter Oak

9    court determined did not provide coverage.

10         Steadfast Ins. Co. v. Dobbas, Case No. 05-CV-00632-FCD-JFM, 2008 WL

11   324023 (E.D. Cal. Feb. 5, 2008), is on point as well.  In that case, a bull owned by

12   Dobbas escaped from the property owned by a third party and caused a car accident.

13   Id. at *1.  Dobbas had a farm liability policy covering his livestock-husbandry activities.

14   Id.  The primary insurance carrier there tendered its policy limits and the parties then

15   agreed to arbitrate the action to determine liability.  Id.  An arbitration award was

16   eventually entered against Dobbas for $5 million, after which Dobbas' counsel advised

17   the claimants that there were two additional insurance policies of which the parties had

18   not been aware.  Id. at *2.  One of those policies was a general commercial liability

19   policy issued by Steadfast.  Id.

20         Steadfast insured James Dobbas, Inc. ("JDI"), as a "Railroad Contractor."  Id. at

21   *3.  The insured's business included railroad salvage and emergency response to trail

22   derailments.  Id.  JDI sought the Steadfast coverage for railroad related functions and did

23   not intend that policy to cover ranching activities.  Id.  The insurance broker similarly

24   testified he never intended to obtain coverage for ranching activities, and the underwriter

25   was unaware of Dobbas' ranching operations.  Id.  Finally, Dobbas himself did not

26   believe the Steadfast policies covered his ranching.  Id.

27         As in Charter Oak, the Dobbas court concluded that the Steadfast policy

28   unambiguously limited coverage to JDI's railroad activities:

1
2
3
4
5
6
7
8

> Under the facts of this case, the Steadfast policy provides coverage for JDI and the individual named insureds only for injuries relating to the business of "Railroad Contractor." The Declarations page tailored for this particular policy limited coverage of the policy based upon the business description. See Charter Oak, 66 Cal. App. 4th at 1087. To hold otherwise, would render the parties' modification of the policy meaningless. Moreover, the extrinsic evidence supports the finding that the parties did not intend for coverage to extend to Dobbas' ranching activities. Dobbas purchased both primary and umbrella coverage for his ranching activities through [other carriers]. If Dobbas believed that the Steadfast policy also covered his ranching activities, he would not have sought that separate coverage.

9   Id. at *6.

10         Dobbas is instructive here for the same reasons as Charter Oak. Most notably,

11  like the policy in Dobbas that insured JDI for its business as "Railroad Contractor," the

12  policies here insured GPD only as a "Property Owner." Nowhere do the Nationwide

13  policies indicate that GPD was insured as the developer and operator of a mobile home

14  park. In addition, the Dobbas court was persuaded by the fact that the insured there

15  clearly knew how to insure his ranching activities and actually obtained coverage for

16  those operations from other carriers. The same logic applies here. GDP clearly knew

17  how to insure the mobile home park and it did so through additional carriers, carriers that

18  specifically referenced CFE in their policies or identified GPD's insured business as, at

19  the very least "Mobile Homes." The record in this case, as in Dobbas, supports the

20  conclusion that the parties did not intend for the Nationwide policies to cover Plaintiffs'

21  damages.

22         In opposition, Plaintiffs do not dispute any of the above facts or argue that CFE is

23  scheduled in the DPPE. Instead, they contend that coverage exists because the

24  operation of CFE was "necessary and incidental" to several premises that were listed.

25  More specifically, some of the DPPEs scheduled the following:

26         5130 County Rd 99W, Dunnigan (1800 square feet
        "BUILDINGS OR PREMISES – BANK OR OFFICE –
27        MERCANTILE")

28  ///

1

2

> 5160 County Rd 99W, Dunnigan (1200 square feet "BUILDINGS OR PREMISES – BANK OR OFFICE – MERCANTILE")

3

> 3120 Adelaide Rd., Paso Robles (described as 840 square-feet "BUILDING OR PREMISES – OFFICE")

4

5 The building at 5130 County Rd 99W was the mobile home residence of the manager of

6 the mobile home park and designated as a GPD office.  The building at 5160 County Rd

7 99W was a satellite ownership residence for CFE and also designated as a GPD office.

8 Finally, the building on Adelaide Road in Paso Robles served as GPD's operational

9 headquarters.  Given that GPD conducted some business out of each of these buildings,

10 including business related to CFE, Plaintiffs thus ask the Court to conclude that the

11 development and management of a 202-unit mobile home park is "necessary and

12 incidental" to these premises.  Stated another way, Plaintiffs contend that because work

13 conducted out of each of these buildings may itself have been "necessary or incidental"

14 to the operation of CFE, then the operation of CFE must also be "necessary or

15 incidental" to those premises.  Plaintiffs cite no authority for this proposition.

16         More importantly, however, the position advanced by Plaintiffs belies common

17 sense.  Even if the terms "necessary" or "incidental" were ambiguous, which they are

18 not, Plaintiff's contention still fails because Plaintiffs' interpretation of the policy terms

19 falls so far outside the bounds of reasonableness.  It simply cannot follow from the plain

20 language of the policies that the development and operation of a mobile home park is

21 either necessary or incidental to the functioning of an office building or an

22 office/residence.  If anything, operation of the office building may be necessary or

23 incidental to the park, but not vice versa.  Indeed, by Plaintiffs' logic, all of GPD's

24 projects and operations (i.e., including the development and management of any of

25 GPD's multiple other mobile home parks, RV parks, and mini-marts, or its water and

26 sewer company)[17] conducted out of any of the above three buildings would be covered

27 ///

28

---

[17] See SSUF Nos. 112-13.

as "necessary or incidental" to that premises.  Such an interpretation would thus render the DPPE entirely illusory.

In sum, the Nationwide policies were issued to GPD as a "property owner" insuring for minimal premiums vacant land and small office buildings.  Nationwide expressly excluded GPD's construction operations and real estate development and expressly scheduled the premises it intended to cover.  CFE was not among the scheduled properties nor was its development and operation "necessary or incidental" to any scheduled premises.  As such, when read as a whole, the Nationwide policies do not cover GPD for any of the losses Plaintiffs sustained, and Nationwide's Motion is GRANTED.

**CONCLUSION**

For the reasons just stated, Nationwide's Motion for Summary Judgment (ECF No. 54) is GRANTED.  This case shall proceed on Plaintiffs' remaining claims against Defendant Century Surety Company.

IT IS SO ORDERED.

Dated:  September 25, 2015

MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT